IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX INC. SECURITIES LITIGATION | CIVIL ACTION FILE NO. 1:17-CV-3463-TWT |

## OPINION AND ORDER

This is a securities fraud class action. It is before the Court on the Lead Plaintiff's Motion for Limited Modification of the PSLRA Discovery Stay [Doc. 52]. For the reasons set forth below, the Lead Plaintiff's Motion for Limited Modification of the PSLRA Discovery Stay [Doc. 52] is GRANTED in part and DENIED in part.

## I. Background

This case arises out of a massive data breach incident. On September 7, 2017, the Defendant Equifax Inc. ("Equifax") announced that it was the subject of a data breach affecting approximately 140 million consumers. The Lead Plaintiff Union Asset Management Holding AG seeks to represent a putative class of investors that purchased the securities of Equifax from February 25, 2016 through September 15, 2017. The Lead Plaintiff alleges that the Defendants committed fraud in connection with the data breach incident that caused a loss to the value of the class's investments. The Lead Plaintiff now moves for a limited modification of the PSLRA's automatic stay of discovery in this case.

It asks that the Court modify the discovery stay to allow the parties to engage in case management and discovery planning activities similar to those that are currently ongoing in the parallel multidistrict litigation arising out of the data breach (the "MDL"). The Court concludes that the Lead Plaintiff's requested modification should be granted as to the Defendant Equifax Inc., but should be denied as to the Defendants Richard F. Smith, John W. Gamble, Jr., Rodolfo O. Ploder, and Jeffrey L. Dodge (the "Individual Defendants").

## II. Discussion

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") imposes an automatic stay of discovery in private securities class actions until a district court can determine the legal sufficiency of the class action claims.[1] Specifically, the PSLRA provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.[2]

"Thus a party asking a court to lift the PSLRA's stay must show that (1) the discovery sought is particularized and (2) necessary to (a) preserve evidence or (b) prevent undue prejudice to the party."[3] "The legislative history of the PSLRA

---

[1]    *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1091 (11th Cir. 2002).

[2]    15 U.S.C. § 78u-4(b)(3)(B).

[3]    *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015).

indicates that Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery . . . or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint . . . ."[4]

The Lead Plaintiff argues that a modification of the discovery stay is necessary to prevent undue prejudice. District courts have construed the phrase "undue prejudice" to mean "improper or unfair treatment amounting to something less than irreparable harm."[5] "In determining whether to lift the stay, courts may take all facts into account to determine whether undue burden would exist."[6] "Courts have found undue prejudice where plaintiffs would be unable to make informed decisions about their litigation strategy in a rapidly shifting landscape because they are the only major interested party without documents forming the core of their proceedings."[7] Undue prejudice has also

---

[4]    *In re WorldCom, Inc. Secs. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002).

[5]    *See N.Y. State Teachers' Ret. Sys.*, 2015 WL 1565462, at *3 (citing cases defining "undue prejudice"); *see also In re Bank of Am. Corp. Secs., Derivative, & ERISA Litig.*, No. 09 MDL 2058(DC), 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) ("District courts have construed 'undue prejudice' to mean 'improper or unfair treatment amounting to something less than irreparable harm.'").

[6]    *In re Bank of Am. Corp.,* 2009 WL 4796169, at *2.

[7]    *Id.* at *2 (citing *In re Worldcom, Inc. Secs. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)).

been found "where the plaintiff lacks access to documents already produced to governmental and other agencies and in other lawsuits."[8] In making this determination, courts often weigh the burden to the defendants against the possibility of prejudice to the plaintiffs.[9] The Lead Plaintiff argues that it will suffer undue prejudice if it cannot engage in discovery planning and preparation efforts that are already underway in the related MDL proceedings.[10] Otherwise, according to the Lead Plaintiff, it will fall far behind the MDL plaintiffs and will be severely disadvantaged in the discovery process because certain tasks, such as serving document requests and negotiating custodians and search terms, can take months to complete.[11]

The Court agrees that the Lead Plaintiff will suffer undue prejudice absent a modification of the discovery stay. Without allowing it to engage in the requested case management and discovery planning efforts, the Lead Plaintiff will fall behind the parties in the parallel proceedings and will be disadvantaged in making important decisions about how to proceed with the case. The Lead Plaintiff would be unable to make "informed decisions about their litigation

---

[8] *N.Y. State Teachers' Ret. Sys.*, 2015 WL 1565462, at *3 (collecting cases).

[9] *In re Bank of Am. Corp.*, 2009 WL 4796169, at *2.

[10] Lead Pl.'s Mot. for Limited Modification of the PSLRA Discovery Stay, at 10.

[11] *Id.*

strategy in a rapidly shifting landscape."[12] For instance, the Lead Plaintiff may be forced to begin taking depositions with only a short amount of time to prepare, or may be forced to seek a stay of the taking of depositions. Allowing the Lead Plaintiff to coordinate discovery planning with Equifax will help keep this case apace with the MDL proceedings without subjecting Equifax to the burdens of actual document production. If this case were to proceed past the motion to dismiss stage, the parties would be able to efficiently begin the discovery process and minimize the disparity in timelines between this case and the related MDL proceedings.

In similar cases involving complex parallel proceedings, courts have found that a securities action plaintiff will suffer undue prejudice if it falls behind the plaintiffs in other related proceedings. For example, in *In re Bank of America Corporation Securities, Derivative, & ERISA Litigation*, the court concluded that the plaintiffs would be unduly prejudiced if they were not permitted to stay apace with the plaintiffs in the related cases.[13] The court noted that:

> Discovery is moving apace in parallel litigation. Without access to documents produced in these other proceedings, plaintiffs in these cases will be unduly prejudiced and will be less able to make informed decisions about litigation strategy. Plaintiffs' pursuit of discovery will also "fall substantially behind the SEC and other

---

[12]     *In re Bank of Am. Corp.*, 2009 WL 4796169, at *2 (citing *In re WorldCom, Inc. Secs. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)).

[13]     *Id.* at *3 ("I conclude that they would be unduly prejudiced if the discovery stay is not lifted.").

government actions." Plaintiffs are not seeking this discovery now merely to engage in a fishing expedition.[14]

Other courts have come to similar conclusions.[15] And, importantly, in each of these cases, the plaintiffs were requesting the actual production of documents, as opposed to the mere discovery preparation that the Lead Plaintiff seeks here. Thus, due to the risk that it could fall far behind the plaintiffs in the related cases, the Court finds that the Lead Plaintiff has satisfied its burden in showing undue prejudice.

The Defendants argue that the Lead Plaintiff has not demonstrated that the delay in discovery caused by the stay would constitute *undue* prejudice.

---

[14] *Id.* (internal citations omitted).

[15] *See, e.g.*, *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015) ("NYSTRS also shows that the discovery sought from the MDL Litigation is necessary to prevent undue prejudice."); *Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*, No. 08 Civ. 9528(SAS), 2009 WL 1285845, *1 (S.D.N.Y. May 8, 2009) ("Given the existence of parallel litigation, without access to the report, plaintiffs are disadvantaged vis-à-vis Brazilian litigants."); *Singer v. Nicor, Inc.*, No. 02 C 5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) ("Plaintiffs here may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have, during the pendency of the motion to dismiss."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL NO. 02-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003) ("Other courts have invoked this exception to give plaintiffs in securities cases access to information that has been made available to investigative agencies and plaintiffs in other actions."); *In re WorldCom, Inc. Secs. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) ("Based upon the unique circumstances of this case, the documents requested by NYSCRF must be produced in order to prevent undue prejudice to the interests of the putative investor class it represents. All of the investigations and proceedings concerning WorldCom are moving apace.").

Instead, according to the Defendants, this is the exact type of prejudice that Congress intended to impose with the PSLRA.[16] Under this view, the harm that the Lead Plaintiff will experience is the result of a deliberate balancing of the pros and cons by Congress. However, the cases the Defendant relies upon for this proposition are distinguishable from the situation here. For instance, in *In re CFS-Related Securities Fraud Litigation*, the court concluded that the discovery delay caused by the automatic stay did not amount to undue prejudice because "[t]he concerns which Plaintiffs raise are presented in all securities cases in which the PSLRA's discovery stay is triggered."[17] The court noted that "[p]rejudice caused by the delay inherent in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice which is neither improper nor unfair."[18] Instead, the court emphasized, "it is prejudice which has been mandated by Congress after a balancing of the various policy interests at stake in securities litigation, including a plaintiff's need to collect and preserve evidence."[19]

---

[16]     Defs.' Br. in Opp'n to Lead Pl.'s Mot. for Limited Modification of the PSLRA Discovery Stay, at 6-7.

[17]     *In re CFS-Related Secs. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001).

[18]     *Id.*

[19]     *Id.*

However, the undue prejudice at risk here is different from the prejudice alleged in *In re CFS-Related Securities Fraud Litigation*. The plaintiffs in that case asserted that undue prejudice would result because the stay had lasted too long, and that witnesses' memories could begin to fade or evidence could be lost. However, those concerns are present in any case in which a discovery stay is imposed, which the court in that case correctly noted. Congress, in enacting the discovery stay, chose to impose such burdens on securities plaintiffs. The situation here is different. While the PSLRA did intend to impose some prejudice on plaintiffs with a delay in discovery, it did not necessarily intend to disrupt a court's management of complex, parallel proceedings or delay discovery to the point that the securities plaintiffs would be irretrievably disadvantaged in relation to plaintiffs in related actions. The concerns highlighted by the Lead Plaintiff here about falling too far behind are not present in every securities case, unlike the concerns in *In re CFS-Related Securities Fraud Litigation*. In fact, these concerns only arise in cases like this, where there are multiple complex, parallel proceedings.

In another case cited by the Defendants, *In re Initial Public Offering Securities Litigation*, the court rejected the plaintiffs' argument that a discovery stay was "unduly prejudicial in this particular case given the size and complexity of the litigation."[20] It acknowledged that "[i]t is true that this case

---

[20] *In re Initial Pub. Offering Secs. Litig.*, 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002).

'represents a consolidation of unique proportions,'" but concluded that such an argument failed to support a finding of undue prejudice because "nothing in language of the PSLRA . . . supports giving more weight to the delay . . . because the case is unusually complex," and because the plaintiffs' resources are more abundant in a large case such as that.[21] In contrast, the Lead Plaintiff will not experience undue prejudice in this case just because of its size and complexity. Instead, the Lead Plaintiff will experience undue prejudice due to the existence of multiple parallel cases arising out of this data breach incident, each of which are uniquely large and complex on their own. This case is not just a complicated securities action – it also coincides with multiple other complex proceedings where discovery preparations are underway and where the Lead Plaintiff risks being left behind. For this reason, *In re Initial Public Offering Securities Litigation* is distinguishable.

The Defendants also argue that the cases relied upon by the Lead Plaintiff as to undue prejudice are inapposite because the Defendants in those cases were bankrupt or insolvent.[22] According to the Defendants, the plaintiffs in those cases were at risk of experiencing irreparable harm because the discovery stay would have prevented them from "vying for a piece of a limited

---

[21]     *Id.*

[22]     Defs.' Br. in Opp'n to Lead Pl.'s Mot. for Limited Modification of the PSLRA Discovery Stay, at 10-11.

pie."[23] Under this reasoning, the plaintiffs in those cases risked missing out on the limited remaining assets of bankrupt defendants since they would arrive late to the settlement table due to the discovery delay. It is true that this is part of the reasoning in the court's decision in *In re Worldcom*. Nonetheless, much of the reasoning of *Worldcom* still applies to this case. In *Singer v. Nicor, Inc.*, the defendants made the same argument that the Defendants make here.[24] The court rejected this distinction, noting that "even if Nicor is not bankrupt, the concerns expressed by the *Enron* and *WorldCom* courts are valid and present in this case" since the plaintiffs still risked being unfairly disadvantaged by falling behind the other plaintiffs.[25] Furthermore, many of the cases cited by the Lead Plaintiff involve defendants that were not bankrupt or insolvent. And, this distinction is further tempered by the fact that the Lead Plaintiff is only requesting that certain preparations for discovery be taken, as opposed to the actual production of documents that the plaintiffs in *Worldcom* sought.

---

[23]    *Id.* at 10.

[24]    *See Singer v. Nicor, Inc.*, No. 02 C 5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) ("Defendants here attempt to distinguish this case from *Enron* and *WorldCom* by noting that the defendants in those cases were bankrupt and subject to other civil lawsuits in which the PSLRA did not apply.").

[25]    *Id.*; *see also N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2015 WL 1565462, at *4 (E.D. Mich. Apr. 8, 2015) ("However, not all of the cases cited by NYSTRS involved bankrupt or sold entities.").

The Defendants further argue that the Lead Plaintiff "falling behind" the plaintiffs in the other related actions does not constitute undue prejudice within the meaning of the PSLRA.[26] The Defendants argue that discrepancies between securities plaintiffs and non-securities plaintiffs in parallel proceedings such as this is the deliberate result of Congress's intention to treat securities actions differently.[27] In the cases cited by the Defendants, the courts emphasize that the plaintiffs were not at risk of suffering undue prejudice because they were not dealing with bankrupt defendants and were not missing out on ongoing settlement negotiations. Thus, no real danger was presented solely from falling behind the parties in the related proceedings.[28] From this, the Defendants argue, undue prejudice cannot result solely from falling behind the parties in parallel proceedings.

However, the cases cited by the Lead Plaintiff more closely reflect the circumstances of this case. In those cases, in which there was a myriad of complex, parallel proceedings, the courts concluded that the risk of "falling

---

[26]    Defs.' Br. in Opp'n to Lead Pl.'s Mot. for Limited Modification of the PSLRA Discovery Stay, at 7-8.

[27]    *Id.*

[28]    *See, e.g., In re Spectranetics Corp. Secs. Litig.*, Nos. 08–cv–02048–REB–KLM, 08–cv–02055–CMA–CBS, 08–cv–02078–MSK–BNB, 08–cv–02267–MSK–CBS, 08–cv–02420–PAB, 08–cv–02603–MSK–BNB, 2009 WL 3346611, at *4 (D. Colo. Oct. 14, 2009); *In re Refco, Inc.*, No. 05 Civ. 8626(GEL), 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006).

behind" amounted to undue prejudice.[29] Likewise, the case at hand involves a uniquely complicated group of parallel proceedings. The MDL is not a garden-variety multidistrict litigation – it is comprised of a consolidation of hundreds of different cases. Thus, even though Equifax is not bankrupt and has not already entered into settlement agreements with other plaintiffs, the unusually massive nature of this case presents a serious risk of undue prejudice to the Lead Plaintiff if it falls too far behind the parties in the related actions. For this reason, this case is more analogous to the cases cited by the Lead Plaintiff as to this issue. Furthermore, in each of the cases cited by the Defendants, the plaintiffs were seeking the actual production of documents. In contrast, the Lead Plaintiff only seeks permission to begin various discovery and case management preparations. Given this, the risk of prejudice to the Lead Plaintiff in falling behind the parties in the related proceedings far outweighs the burden to Equifax in engaging in these preparations.

However, the Court concludes that the Lead Plaintiff will not be unduly prejudiced if the discovery stay remains in place as to the Individual Defendants. Presumably, the vast majority of documents are in the custody of Equifax, and not the Individual Defendants. Additionally, the bulk of discovery preparation efforts will involve the Lead Plaintiff and Equifax, and not the

---

[29]    *See, e.g.*, *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2015 WL 1565462, at *1-2 (E.D. Mich. Apr. 8, 2015); *In re Bank of Am. Corp. Secs., Derivative, & ERISA Litig.*, No. 09 MDL 2058(DC), 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009).

Individual Defendants. Excluding the Individual Defendants from these discovery and case management preparations will not result in the Lead Plaintiff falling far behind the plaintiffs in the parallel actions. Thus, the Lead Plaintiff has failed to show that it would be unduly prejudiced if the discovery stay remains in place as to the Individual Defendants.

The modification of the stay as to Equifax is also warranted because the burden on the Defendant would be slight. The discovery planning activities requested by the Lead Plaintiff are already underway in the MDL proceedings, and ordering Equifax to engage in these same activities in the securities action would not impose an undue burden on it. The Defendants acknowledge this much.[30] Other courts have found that "[t]he burden on the defendants is slight when a defendant 'has already found, reviewed and organized the documents.'"[31] Likewise, the burden on Equifax here would be slight since it will already be

---

[30]    *See* Defs.' Br. in Opp'n to Lead Pl.'s Mot. for Limited Modification of the PSLRA Discovery Stay, at 9 ("[M]uch of the work needed to adapt elements of discovery 'planning' already undertaken or underway in the MDL . . . will be 'incremental' to work already done or in progress in the MDL."). The Defendants make this argument for the proposition that the Lead Plaintiff will not be unduly prejudiced since much of this preparation is already being taken care of in the MDL. However, as discussed already, the Lead Plaintiff will be prejudiced by its exclusion from these ongoing preparations because it will fall behind the rest of the parties involved in these proceedings. Instead, this argument shows that the burden of such discovery preparations will be small as to Equifax.

[31]    *In re Bank of Am. Corp. Secs., Derivative, & ERISA Litig.*, No. 09 MDL 2058(DC), 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) (quoting *Waldman v. Wachovia*, No. 08 Civ 2913(SAS), 2009 WL 86763, at *2 (S.D.N.Y. Jan. 12, 2009)).

engaged in many of these same discovery preparations in the MDL anyway. As one court noted in support of its decision to lift the PSLRA stay, "in a sense this discovery has already been made, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse."[32] Equifax will inevitably engage in most of these discovery preparations anyway. The only question is whether the Lead Plaintiff should be excluded from these preparations due to the "strictures" of the PSLRA, which the Court declines to do. Furthermore, as the Lead Plaintiff has repeatedly emphasized, this case is distinct from all of the cases cited by the Defendants because the Lead Plaintiff does not request the production of documents. Instead, it merely seeks to begin discovery preparation and management efforts, which imposes a smaller burden than the production of documents.

The Defendants argue that the requested modification will impose a heavy burden on them.[33] They contend that these discovery preparations, including identifying and organizing the documents in the Lead Plaintiff's document requests, constitute a large undertaking. Furthermore, they contend that the Lead Plaintiff's requests may be mooted or substantially narrowed by the Court's eventual ruling on a motion to dismiss. Although Equifax will

---

[32]     *In re LaBranche Secs. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004) (quoting *In re Enron Corp. Secs., Derivative & ERISA Litig.*, No. MDL-1446, 2002 WL 31845114, at *3 (S.D. Tex. Aug. 16, 2002)).

[33]     Defs.' Br. in Opp'n to Lead Pl.'s Mot. for Limited Modification of the PSLRA Discovery Stay, at 13-14.

undoubtedly experience some burden in engaging in these planning activities for the securities action, the Court finds that it is a slight burden when put into the context of this entire complex litigation due to the overlap that these preparations will have with those of the MDL. While it is true that an eventual ruling on a motion to dismiss could moot some of the planning efforts that the Lead Plaintiff seeks, the Court nonetheless concludes that such a burden on Equifax would be slight compared to the prejudice the Lead Plaintiff would experience without the modification.

The Defendants also argue that the burden on a defendant is irrelevant when determining whether to lift a PSLRA stay.[34] According to the Defendant, the Court's inquiry should be limited to whether the discovery sought is particularized, and whether it is necessary to preserve evidence or avoid undue prejudice to the plaintiff. However, the Court disagrees. When deciding whether a plaintiff will suffer undue prejudice, courts frequently look to the burden that such discovery will put on the defendants.[35] Courts may take all facts into

---

[34]    *Id.* at 12-14.

[35]    *See, e.g.*, *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2015 WL 1565462, at *4 (E.D. Mich. Apr. 8, 2015) ("Production of the documents would not unduly burden the defendants, because they already had reviewed and compiled the documents when they produced them to other entities or parties."); *In re LaBranche Secs. Litig.*, 333 F. Supp. 2d at 183 ("When deciding whether or not to lift the PSLRA's discovery stay, 'it is customary to consider whether a production request places an undue burden on the party from which it is requested.'"); *Singer v. Nicor, Inc.*, No. 02 C 5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) ("[D]efendants would not be unduly burdened by producing them to plaintiffs now.").

account to determine whether undue prejudice exists, and often "weigh the burden to defendants against the potential prejudice to plaintiffs."[36] Here, the potential undue prejudice to the Lead Plaintiff outweighs the burden to Equifax.

However, such a burden *would* be substantial as to the Individual Defendants, who are individual persons without access to the same vast resources that a corporate entity such as Equifax has. Furthermore, most of the Individual Defendants, excluding Mr. Smith, are not named as defendants in the MDL action. Thus, unlike Equifax, ordering them to participate in discovery preparations would require them to engage in planning activities that they would otherwise not be engaged in, which is a crucial distinction. Therefore, since the burden would be substantial to the Individual Defendants, and since the risk of undue prejudice to the Lead Plaintiff is low, the Court will not modify the discovery stay as to the Individual Defendants.

Furthermore, modification of the discovery stay as to Equifax will be necessary to allow the Court to effectively manage the progress of this case. As other courts have recognized in modifying the PSLRA discovery stay, "keeping all parties on an equal footing with respect to discovery serves important case management interests in complex litigation."[37] Allowing discovery preparations

---

[36]    *In re Bank of Am. Corp. Secs., Derivative, & ERISA Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009).

[37]    *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL NO. 02-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003).

to begin in this case will make sure that the case proceeds at a proper pace. The requested modification will help keep the securities action on a similar timeline as the MDL proceedings, which would be especially useful for case management if depositions begin. Absent these preparations, the risk of discovery disputes and other case management issues will increase, which would disrupt the orderly development of the case. Discovery disputes would become especially likely if this case falls far behind the progress of the related proceedings due to the conflicting interests of the parties in the various related actions. Keeping these cases on a moderately similar timeline would help the Court expeditiously resolve any discovery issues that may arise from these varying interests. The Court may take all facts, including this, into account when determining whether to lift such a stay. Therefore, since this limited modification of the discovery stay will support the Court's ability to manage this case, the Court determines that this factor weighs in favor of a modification.

Additionally, the requested modification does not contravene the purposes behind the PSLRA's automatic discovery stay. Congress enacted the PSLRA's discovery stay to prevent securities plaintiffs from using burdensome discovery to leverage settlements from defendants, and to prevent plaintiffs from using discovery as a fishing expedition to find sustainable claims.[38] Neither of these concerns are implicated here. First, the requested planning activities will not be

---

[38]     *In re WorldCom, Inc. Secs. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002).

so burdensome as to force Equifax "to settle an otherwise frivolous class action."[39] As discussed above, the burden on Equifax will be slight since it will already inevitably be engaged in most of these efforts in the related data breach cases. Second, the discovery planning will not allow the Lead Plaintiff to find sustainable claims that bolster its case because it is not requesting the actual production of documents. Without document production, the Lead Plaintiff would not be able to discover new facts supporting new claims. Therefore, since the requested modification is consistent with the intentions of the PSLRA, the Court concludes that it is justified under these circumstances.

The Defendants argue that it is both "irrelevant and incorrect" for the Court to consider whether a requested modification implicates the concerns underlying the PSLRA.[40] However, this is a relevant inquiry. "[C]ourts have modified the discovery stay in securities class actions when doing so would not frustrate Congress's purposes in enacting the PSLRA."[41] The cases cited by the Defendants state that the fact that the PSLRA's goals are not frustrated is not sufficient *on its own* to justify lifting the discovery stay. While it is true that this is not sufficient on its own, it is still relevant when taking all factors into

---

[39]    *Id.*

[40]    Defs.' Br. in Opp'n to Lead Pl.'s Mot. for Limited Modification of the PSLRA Discovery Stay, at 15-16.

[41]    *In re Bank of Am. Corp. Secs., Derivative, & ERISA Litig.*, No. 09 MDL 2058(DC), 2009 WL 4796169, at * 1 (S.D.N.Y. Nov. 16, 2009).

account. As already noted, courts can take all facts, including this, into account when determining whether to modify the PSLRA's discovery stay.[42] All of the factors discussed above, taken together, support a limited modification of the discovery stay. Such a modification will help prevent undue prejudice to the Lead Plaintiff, will inflict a minimal burden on Equifax, will promote the case management needs of the Court, and will not contravene the goals of the PSLRA. For this reason, the Court finds the Defendants' argument unpersuasive.

Finally, the discovery sought by the Lead Plaintiff is sufficiently particularized. The PSLRA allows for "particularized discovery" if it is necessary to preserve evidence or to prevent undue prejudice.[43] "[T]he meaning of 'particularized' in any given case 'must take into account the nature of the underlying litigation.'"[44] For instance, courts have modified the discovery stay to grant plaintiffs in securities class actions access to information that has been made available to regulators and plaintiffs in other actions.[45] "These courts reason that such discovery is 'particularized' because it is limited to the

---

[42]     *Id.* at *2.

[43]     15 U.S.C. § 78u-4(b)(3)(B).

[44]     *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015) (quoting *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004)).

[45]     *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL NO. 02-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003) (collecting these cases).

discovery documents that have already been produced to others and it prevents 'undue prejudice' by placing all potential claimants on an equal footing with respect to discovery."[46] The discovery sought by the Lead Plaintiff is limited to case management and discovery planning activities that will already be occurring in the MDL. This limited discovery preparation is particularized within the meaning of the PSLRA.[47] The Lead Plaintiff is only seeking permission to begin the same discovery preparations that are already underway in the MDL proceedings. This request is especially reasonable when taking the context of the entire case into account – this is a large, complicated case coinciding with several other complex cases arising out of the data breach. Furthermore, the Lead Plaintiff is not seeking the production of documents. Instead, it is merely seeking permission to begin discovery preparations, which weighs in favor of finding the request to be particularized.[48] This narrow request

---

[46]     *Id.*

[47]     *See, e.g.*, *N.Y. State Teachers' Ret. Sys.*, 2015 WL 1565462, at *3 ("The discovery NYSTRS seeks is particularized. It is limited to materials that have been produced already and which will be produced in the MDL Litigation."); *In re Royal Ahold N.V.*, 220 F.R.D. at 250 ("[T]he motion at issue here describes a 'clearly defined universe of documents,' and the burden of producing the materials should be slight, considering that the defendants have previously produced them to other entities.").

[48]     *See In re Grand Casinos, Inc. Secs. Litig.*, 988 F. Supp. 1270, 1273 (D. Minn. 1997) ("Here, the 'discovery' is distinctly 'particularized' for it does no more than 'preserve evidence' in the care, custody or control of third-parties, who will not be subjected to any intrusive investigation unless the Motion to Dismiss is denied . . . .").

cannot be characterized as part of a fishing expedition or frivolous strike suit by the Lead Plaintiff.[49] Taking the entire context of the underlying litigation into account, the Court finds this requested discovery to be particularized.

Therefore, after assessing all of these factors, the Court concludes that the limited modification of the PSLRA stay is justified in this case as to Equifax. This particularized modification would be in the best interests of the litigation and would prevent undue prejudice to the Lead Plaintiff. As another court explained in allowing for limited discovery:

> This approach makes sense in a case like this where (1) the Securities Action plaintiffs would be at a serious disadvantage if they are denied access to documents that are produced to the other plaintiffs and government investigators; (2) the defendants will not incur any additional costs if the Securities Actions plaintiffs are given access to the documents; (3) keeping all parties on an equal footing with respect to discovery serves important case management interests in this complex litigation; and (4) none of the claims at issue are frivolous.[50]

For similar reasons, the Court concludes that the Lead Plaintiff's requested modification is warranted in this case.

---

[49] *See In re Worldcom, Inc. Secs. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002) ("Where, as here, plaintiffs are not in any sense engaged in a fishing expedition or an abusive strike suit and do not thereby act in contravention of the fundamental rationales underlying the PSLRA discovery stay, and where plaintiffs would be substantially prejudiced by the maintenance of the stay, defendants cannot call upon the ambiguous notion of 'particularized' discovery to bend Section 78u–4(b)(3)(B) to a purpose for which it was not intended.").

[50] *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL NO. 02-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003).

Finally, the Lead Plaintiff agrees with the Defendants that modification of the stay is not necessary to preserve evidence.[51] The PSLRA already requires the parties to this action to preserve any evidence in their custody or control during the pendency of the stay of discovery.[52] However, the Lead Plaintiff *does* seek permission to serve document preservation subpoenas on third parties, who are not subject to the document preservation mandate of the PSLRA.[53] The Defendants argue in response that this request for third-party subpoenas is both duplicative and non-particularized. They argue that it is duplicative because the MDL has already addressed the issue of third-party document preservation. According to the Defendants, the Lead Plaintiff has not shown that those already-served subpoenas are insufficient to preserve evidence, or that any other third parties not served with preservation subpoenas still need to be served. The Defendants also argue that this request is not particularized because the Lead Plaintiff has not specified the number, recipients, or scope of subpoenas it desires to serve.[54]

---

[51]     Pl.'s Reply Br., at 2 n.2.

[52]     15 U.S.C. § 78u-4(b)(3)(C)(I).

[53]     *See In re Grand Casinos, Inc. Secs. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997) ("Unlike the evidence in the parties care, custody or control, the documentary evidence of third-parties is not expressly subject to any preservation Order and, inadvertently, or otherwise, such evidence may be destroyed before the Court rules on the pending dispositive Motion.").

[54]     Defs.' Br. in Opp'n to Lead Pl.'s Mot. for Limited Modification of the PSLRA Discovery Stay, at 5.

However, the Court concludes that the Lead Plaintiff should be permitted to serve any necessary third-party preservation subpoenas. But, the Lead Plaintiff will be limited to serving subpoenas only to those third parties that have not already been served with preservation subpoenas in the MDL proceedings. Thus, any concerns as to duplicativeness will be addressed because the Lead Plaintiff will only be permitted to supplement the subpoenas that have already been served. This discovery would also be particularized. As noted above, the meaning of the term "particularized" depends upon the context of the particular case, and must take into account the nature of the underlying litigation.[55] Under this limited modification, the Lead Plaintiff will only serve necessary subpoenas to parties who have not previously been served preservation subpoenas in the MDL. This is sufficiently narrow to be particularized when considering the entire context of the case. Consequently, the Court concludes that the Lead Plaintiff should be able to serve these necessary preservation subpoenas. In fact, such a decision is consistent with the PSLRA because in it Congress expressed a desire to make sure that relevant evidence is preserved without being subjected to production.[56]

---

[55] *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015) (quoting *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004)).

[56] *In re Grand Casinos, Inc. Secs. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997) ("[T]he Plaintiffs' service of Subpoenas *duces tecum* would further Congress' intent by subjecting relevant evidence to a 'stay put' directive whether in the hands of the parties, or in those of third-parties, but would not allow the

Therefore, the Court orders that the Lead Plaintiff and Equifax:

(a) Meet and confer, and, within 30 days of this Order, seek entry of orders governing the treatment of confidential material and the production of Electronically Stored Information ("ESI");

(b) Meet and confer, and, within 30 days of this Order, seek entry of a proposed discovery schedule and Case Management Order;

(c) May serve initial requests for the production of documents;[57]

(d) Meet and confer regarding the custodians whose ESI will be searched and what search terms should be used to search for ESI in response to any initial requests for the production of documents, and report to the Court within 75 days of this Order on any disagreements or issues with respect to that process; and

---

Plaintiff to engage in discovery until such time as the District Court should rule on the Motion to Dismiss in a way that would warrant an enforcement of the Subpoenas."); *see also N.Y. State Teachers' Ret. Sys.*, 2015 WL 1565462, at *5-6 (same).

[57]    The Defendants argue that requiring the parties to serve responses and objections to document requests would advance discovery in this case ahead of the MDL because such responses and objections are not due in that case until after adjudication of any motions to dismiss. *See* Defs.' Br. in Opp'n to Lead Pl.'s Mot. for Limited Modification of the PSLRA Discovery Stay, at 5. The Court agrees. Responses and objections to document requests in the MDL are not due until 30 days after a ruling on Equifax's motions to dismiss. *See* [Doc. 255] at 17 under No. 17-md-2800-TWT. Requiring the service of objections and responses in this case before a ruling on the motion to dismiss would put this case ahead of the MDL in that respect, which is inconsistent with the intentions of the PSLRA. Therefore, the Court will only permit the service of initial requests for the production of documents.

(e) May serve necessary document preservation subpoenas on Third

Parties that have not been served in the MDL.

### III. Conclusion

For the reasons stated above, the Lead Plaintiff's Motion for Limited

Modification of the PSLRA Discovery Stay [Doc. 52] is GRANTED in part and

DENIED in part.

SO ORDERED, this 15 day of June, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge