# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **IN RE EQUIFAX INC. SECURITIES LITIGATION** | Consolidated Case No. 1:17-cv-03463-TWT |

# MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND AUTHORIZING DISSEMINATION OF NOTICE OF SETTLEMENT

# **TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT ................................................................1

II.   HISTORY OF THE LITIGATION ..................................................4

III.  THE PROPOSED SETTLEMENT ..................................................6

IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
      APPROVAL ........................................................................................7

      A.    Standards Governing Approval Of Class Action
            Settlements ..............................................................................7

      B.    The Court "Will Likely Be Able To" Approve The
            Proposed Settlement Under Rule 23(e)(2) ............................9

            1.    "Procedural" Aspects Of The Settlement Satisfy
                  Rule 23(e)(2) ................................................................9

            2.    The Settlement's Terms Are Adequate And
                  Equitable ....................................................................11

V.    CERTIFICATION OF THE SETTLEMENT CLASS FOR
      PURPOSES OF THE SETTLEMENT IS APPROPRIATE ........................19

      A.    The Settlement Class Satisfies The Requirements Of
            Rule 23(a) ..............................................................................20

            1.    Numerosity Is Established ..........................................20

            2.    Commonality Is Established ........................................21

            3.    Typicality Is Established.............................................21

            4.    Adequacy Is Established.............................................21

      B.    The Settlement Class Satisfies The Requirements Of
            Rule 23(b)(3) ........................................................................22

       1.      Common Questions Predominate ................................................22

       2.      A Class Action Is A Superior Method Of
                Adjudicating Lead Plaintiff's Claims .......................................23

VI.   THE PROPOSED FORM AND METHOD OF NOTICE ARE
      APPROPRIATE AND SHOULD BE APPROVED ....................................24

VII.  CONCLUSION...........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agnone v. Camden Cnty., Ga.*,
 No. 2:14-cv-00024, 2019 WL 1368634 (S.D. Ga. Mar. 26, 2019) ..................... 8

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) .................................................................................... 19, 22

*In re BellSouth Corp. Sec. Litig.*,
 No. 1:02-cv-2142, 2006 WL 870362 (N.D. Ga. Apr. 3, 2016) ......................... 23

*Bennett v. Behring*,
 737 F.2d 982 (11th Cir. 1984) ............................................................................ 9

*Carpenters Health & Welfare Fund. v. Coca-Cola Co.*,
 587 F. Supp. 2d 1266 (N.D. Ga. 2008) ............................................................. 18

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
 No. 1:00-cv-2838, 2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ............. 12, 25

*In re Checking Account Overdraft Litig.*,
 275 F.R.D. 654 (S.D. Fla. 2011) ....................................................................... 11

*In re Checking Account Overdraft Litig.*,
 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................................. 12

*In re Checking Account Overdraft Litig.*,
 No. 1:09-MD-02036, 2012 WL 4173458 (S.D. Fla. Sept. 19, 2012) ................ 19

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
 258 F.R.D. 545 (N.D. Ga. 2007) ...................................................................... 19

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
 317 F.R.D. 675 (N.D. Ga. 2016) ...................................................................... 23

*Gutter v. E.I. Dupont De Nemours & Co.*,
 No. 95-2152-CIV, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) .... 12

iii

*In re HealthSouth Corp. Sec. Litig.*,
  572 F.3d 854 (11th Cir. 2009) ............................................................... 7

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ............... 18

*In re Internap Network Servs. Corp. Sec. Litig.*,
  No. 1:08-cv-03462-JOF, 2012 WL 12878579 (N.D. Ga. Aug. 23, 2012) ......... 21

*Lunsford v. Woodforest Nat'l Bank*,
  No. 1:12-cv-103-CAP, 2014 WL 12740375 (N.D. Ga. May 19, 2014) ............ 10

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 660 (M.D. Ala. 1988) ...................................................... 7

*In re Netbank, Inc. Sec. Litig.*,
  259 F.R.D. 656 (N.D. Ga. 2009) .............................................. 20, 21

*Smith v. Wm. Wrigley Jr. Co.*,
  No. 09-60646-CIV., 2010 WL 2401149 (S.D. Fla. June 15, 2010) ................ 8

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) ...................................................... 12

*In re Theragenics Sec. Litig.*,
  205 F.R.D. 687 (N.D. Ga. 2002) ...................................................... 22

*In re Vesta Ins. Grp., Inc., Sec. Litig.*,
  No. 2:98-cv-1407, 1999 WL 34831475 (N.D. Ala. Oct. 25, 1999) ................ 23

**Statutes and Rules**

15 U.S.C. § 78u-4(e) ............................................................... 17

28 U.S.C. § 1292(b) ............................................................... 5

Class Action Fairness Act, 28 U.S.C. § 1715 ................................. 25

Fed. R. Civ. P. 23 ................................................................ *passim*

Lead Plaintiff Union Asset Management Holding AG ("Union" or "Lead Plaintiff"), on behalf of itself and the other members of the Settlement Class (defined below), respectfully submit this unopposed motion,[1] pursuant to Federal Rule of Civil Procedure ("Rule") 23(e)(1), for entry of the agreed-upon [Proposed] Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement ("Preliminary Approval Order"), which is filed herewith.[2]

## I.    PRELIMINARY STATEMENT

Following more than two years of hard-fought litigation, Union has reached an agreement with Defendants[3] to settle the above-captioned action (the "Action") for a total of $149,000,000 in cash (the "Settlement"). The Settlement represents an excellent result considering the risks and challenges of the Action. If approved, this Settlement would be the largest securities class action recovery in this District, and the fourth largest securities class action recovery in the Eleventh Circuit. The $149 million cash settlement fund represents a recovery of approximately 25% of the

---

[1] Without adopting or agreeing with all statements made by Lead Plaintiff herein, Defendants join in Lead Plaintiff's request that the Court grant preliminary approval of the Parties' Settlement.

[2] Unless otherwise defined, all capitalized terms used herein have the meanings given to them in the Stipulation and Agreement of Settlement dated February 12, 2020 (the "Stipulation"), attached as Ex. 2 to the present motion (the "Motion"). The proposed Preliminary Approval Order is attached as Ex. 3 to the Motion.

[3] Defenants are Equifax Inc. ("Equifax" or the "Company") and Richard F. Smith.

likely maximum aggregate damages based on the inflation amounts in the Plan of Allocation. Union seeks the Court's preliminary approval under Rule 23(e)(1) so that notice can be disseminated to the Settlement Class and a hearing for final approval of the Settlement (the "Settlement Fairness Hearing") can be scheduled.

In agreeing with Defendants to resolve the Action, Lead Plaintiff and Lead Counsel made a fully informed evaluation of the risks of continued litigation and the fairness of resolution at this time. Union respectfully submits that the Settlement appropriately balances Lead Plaintiff's objective of securing the highest possible monetary recovery for the Settlement Class against the significant risk that the Class could receive a smaller recovery—*or no recovery at all*—if Defendants were to prevail at summary judgment or trial. Lead Plaintiff also faced the risk that Defendants could succeed on their defenses to loss causation and damages. If so, even if Lead Plaintiff succeeded in certifying a class and establishing Defendants' liability, the recovery could be substantially less than the recovery in the Settlement.

The Settlement is also the result of extensive arm's-length negotiations conducted with the assistance of one of the most experienced and respected mediators of complex litigation in the country, former U.S. District Court Judge Layn R. Phillips ("Judge Phillips"). The Parties' settlement discussions included a

formal mediation session with Judge Phillips, accompanied by extensive written submissions, followed by months of negotiations facilitated by Judge Phillips.

Lead Plaintiff and Lead Counsel devoted enormous time, effort, and resources to this Action. Lead Counsel conducted an extensive investigation into the claims asserted in the Action, drafted a detailed consolidated complaint, and briefed and argued their opposition to defendants' motion to dismiss the complaint. Then, Lead Counsel engaged in substantial discovery, which involved several discovery disputes requiring the Court's intervention, and obtaining and reviewing more than one million pages of documents. Lead Counsel also fully briefed the motion for class certification, which included the exchange of expert reports on class certification, the depositions of the Parties' experts, and the deposition of two representatives from Lead Plaintiff. Based on this work, Lead Plaintiff and Lead Counsel had a detailed record to consider and a very well-developed understanding of the strengths, weaknesses, and risks of the Action, all of which informed their determination that the Settlement is fair, reasonable, and adequate.

In this Motion, Union requests only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class and the Settlement Fairness Hearing can be scheduled. At the Settlement Fairness Hearing, following additional briefing and addressing any potential objections to the

Settlement, the Court will make a final determination as to whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate.

Lead Plaintiff submits that the Settlement warrants preliminary approval and respectfully requests that the Court enter the Preliminary Approval Order.

## II.    HISTORY OF THE LITIGATION

This securities fraud class action was commenced in September 2017, when certain related class actions were filed in this District alleging violations of the federal securities laws. On January 10, 2018, the Court consolidated those actions under the above caption. ECF No. 30. On February 21, 2018, the Court appointed Union as Lead Plaintiff pursuant to the PSLRA and approved Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel. ECF No. 32.

On April 23, 2018, Union filed and served its Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"). ECF No. 49. The Complaint asserted claims against defendants Equifax, Smith, John W. Gamble, Rodolfo O. Ploder, and Jeffrey L. Dodge under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder, and against Smith, Gamble, Ploder, and Dodge under Section 20(a) of the Exchange Act. The Complaint alleged that defendants made materially false and misleading statements about Equifax's cybersecurity, including about Equifax's efforts to

4

safeguard personal information that is at the core of its business and Equifax's compliance with applicable data protection laws and cybersecurity best practices.

On June 7, 2018, defendants moved to dismiss the Complaint. ECF No. 62. Lead Plaintiff opposed the motion, and after briefing and oral argument, on January 28, 2019, the Court issued an extensive opinion and order denying in part and granting in part defendants' motion to dismiss. ECF No. 84. Specifically, the Court denied the motion with respect to defendants Equifax and Smith and granted the motion with respect to Gamble, Ploder, and Dodge. Following the Court's denial of their motion to dismiss, Defendants filed a motion for clarification of the Court's order. ECF No. 88. Lead Plaintiff opposed the motion, and after full briefing and oral argument, on April 3, 2019, the Court denied the motion for clarification. ECF No. 103. One week later, on April 10, 2019, Defendants filed a joint motion for interlocutory appeal of the Court's motion to dismiss order pursuant to 28 U.S.C. § 1292(b). Lead Plaintiff opposed the motion, and after full briefing, the Court denied the motion on July 29, 2019. ECF No. 135.

On March 29, 2019, Lead Plaintiff filed its motion for class certification (the "Class Certification Motion"), which was accompanied by a report from Lead Plaintiff's expert on market efficiency and common damages methodologies. ECF No. 102. On August 12, 2019, Defendants filed their opposition to the Class

5

Certification Motion, which was accompanied by a report from Defendants' expert. ECF No. 140. On October 11, 2019, Lead Plaintiff filed its reply papers. ECF No. 147. In connection with the Class Certification Motion, Union produced over 2,500 documents, totaling more than 28,000 pages. Defendants' Counsel deposed, and Lead Counsel defended, the deposition of two representatives from Lead Plaintiff, as well as Lead Plaintiff's expert. Lead Counsel also deposed Defendants' expert.

The Parties commenced fact discovery in April 2019. Defendants and third parties produced more than 171,000 documents, totaling over one million pages. In addition, the Parties met and conferred and exchanged numerous letters concerning disputed discovery issues over several months. Lead Plaintiff made a number of applications to the Court regarding disputed discovery issues, some of which remained pending at the time of the Settlement. *See* ECF Nos. 52, 129, and 152.

## III.   THE PROPOSED SETTLEMENT

The Parties began exploring settlement in the spring of 2019 and agreed to engage in private mediation before Judge Phillips (the "Mediator"). On May 29, 2019, counsel for the Parties participated in a full-day in-person mediation session and engaged in vigorous settlement negotiations, but were not able to reach an agreement. In advance of that session, the Parties exchanged detailed opening and reply mediation statements, which addressed both liability and damages issues.

Following the May 29, 2019 mediation, the Parties continued their settlement negotiations through the Mediator. After several months of protracted negotiations, the Parties reached an agreement in principle to settle pursuant to a Mediator's recommendation that was memorialized in a term sheet executed on November 16, 2019 (the "Term Sheet"). Thereafter, the Parties negotiated the Stipulation.

In accordance with the Stipulation, Equifax, on behalf of Defendants, will cause to be paid $149,000,000 in cash (the "Settlement Amount"). *See* Stipulation ¶(8). The Net Settlement Fund (as defined in the Stipulation) will be distributed to eligible Class Members in accordance with a plan of allocation to be approved by the Court (discussed in more detail below).

## IV.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.  <u>Standards Governing Approval Of Class Action Settlements</u>

Courts have long recognized a strong policy and presumption in favor of class action settlements. *See In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). This policy consideration applies especially to securities fraud class actions. *See, e.g.*, *Mashburn v. Nat'l Healthcare, Inc*., 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("securities fraud class actions readily lend themselves to settlement").

7

Rule 23(e) requires judicial approval of a compromise of claims brought on a classwide basis. *See* Fed. R. Civ. P. 23(e). Judicial approval of a class action settlement is a two-step process—*first*, the Court performs a preliminary review of the terms to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1), and, *second*, after notice and a hearing, the Court determines whether to grant final approval, *see* Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval to authorize notice of a settlement upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). This standard was established by amendments to Rule 23(e) effective as of December 1, 2018. Prior to those amendments, courts had developed a standard for preliminary approval that was substantively similar to the current standard. A common formulation was that preliminary approval should be granted to a proposed settlement "if it is within range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement." *See, e.g.*, *Agnone v. Camden Cnty., Ga.*, 2019 WL 1368634, at *9 (S.D. Ga. Mar. 26, 2019). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, 2010

WL 2401149, at *2 (S.D. Fla. June 15, 2010) (citation omitted).

In considering *final* approval of the Settlement, Federal Rule 23(e)(2) provides that the Court consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[4] Each of these factors is satisfied here.

## B. The Court "Will Likely Be Able To" Approve The Proposed Settlement Under Rule 23(e)(2)

### 1. "Procedural" Aspects Of The Settlement Satisfy Rule 23(e)(2)

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment.

---

[4] At final approval the Court will also consider the Eleventh Circuit's long-standing approval factors, which overlap with those in Rule 23(e)(2): "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring,* 737 F.2d 982, 986 (11th Cir. 1984).

This Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). *First*, as detailed above, the Parties have been intensely litigating this Action for more than two years. Lead Counsel's settlement posture was informed by its detailed work on all aspects of this hard-fought case, including its investigation, work on multiple pleading and class certification motions, discovery, and in the mediation and settlement negotiations. Fully aware of the strengths and weaknesses of the Action, Lead Counsel—which has extensive experience in securities class actions—conducted the negotiations seeking to achieve the best possible result for the Settlement Class, while accounting for the risks of continued litigation. *See Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *9 (N.D. Ga. May 19, 2014) ("The Court should give 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'").

Additionally, Lead Plaintiff—a sophisticated institutional investor who suffered substantial losses—has claims that are typical of and coexistent with those of other Class Members. As such, Lead Plaintiff also has an interest in obtaining the largest possible recovery from Defendants.

*Second*, the Parties' settlement negotiations were at arm's-length and facilitated by one of the most experienced securities class action mediators in the

United States, Judge Phillips, whose efforts culminated in the Parties' agreement to resolve the Action pursuant to a Mediator's recommendation for $149 million. These facts strongly support the conclusion that the Settlement is fair. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

In sum, where, as here, the Settlement is the product of arm's-length negotiations conducted by an experienced mediator, has been approved by the Court-appointed Lead Plaintiff, and was entered into by informed and experienced counsel, it demonstrates the procedural fairness of the settlement process.

### 2.  The Settlement's Terms Are Adequate And Equitable

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D). Here, the Settlement represents a very favorable result for the Settlement Class. Furthermore, the proposed plan for allocating the Settlement treats Class Members equitably.

**(a)** **The Settlement Provides Substantial Relief, Especially In Light Of The Costs, Risks, And Delay Of Further Litigation**

A key factor in assessing the approval of a class action settlement is plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. In making this assessment, "the Court can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011) (the court need not determine whether the settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial.").

The proposed Settlement provides for a cash payment of $149 million. The Settlement—which represents the largest securities class action recovery ever in the Northern District of Georgia—is an excellent result for Class Members, especially considering the significant risks of continued litigation. *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008) ("Courts have repeatedly noted that [s]tockholder litigation is notably difficult and notoriously uncertain.") (quotation marks and citations omitted); *see also Gutter v. E.I. Dupont De Nemours & Co.*, 2003 U.S. Dist. LEXIS 27238, at *5 (S.D. Fla. May

12

30, 2003) ("[T]he risks associated with proceeding to trial in . . . complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement.").

Although Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit, they recognize the expense and length of litigation through trial and appeals, as well as the very substantial risks they would face in establishing liability and damages.

First, Lead Plaintiff faced significant risks that, at either the summary-judgment stage or after a trial, it would not be able to establish that Defendants' statements about Equifax's cybersecurity were actionable under the federal securities laws. For example, Defendants would have continued to argue that their statements about compliance with applicable data protection laws and commitment to cybersecurity were not false. Defendants made credible arguments that the Company was expending significant effort and money on cyber-defenses, which made certain of their statements regarding cybersecurity true. Defendants would have also continued to argue that statements Lead Plaintiff alleged to be misleading were "generic" and immaterial. *See* ECF No. 105-1 at 2-3, 5, 9, 10-12, and 22.

Second, Lead Plaintiff would have faced challenges in proving that Defendants made the alleged false statements with scienter: that they acted with

intent or recklessness. For example, Defendants would have continued to argue that the absence of proof of Defendants' knowledge that their public statements were misleading, when combined with Defendants' argument that the Company would be able to show that it had a reasonable cybersecurity program in place and was making efforts to improve the program, do not establish the requisite scienter to support a securities fraud claim.

Even if Lead Plaintiff established liability, it would have faced significant hurdles in proving loss causation—that the alleged misstatements were the cause of investors' losses—and in proving damages with respect to at least some of the alleged corrective disclosures. For example, Defendants would have continued to argue that Class Period should start later, in March 2017, and end earlier, on September 7, 2017. Specifically, Defendants contend the Class Period should start in March 2017 (rather than in February 2016) when Defendants are alleged to have received a report from an outside consulting firm (Mandiant) making certain observations regarding aspects of Equifax's cybersecurity program. Defendants also contend that the Class Period should end on September 7, 2017, the date of Equifax's initial disclosure of the Data Breach, not September 15, 2017, because the alleged corrective disclosures made after the initial disclosure of the Data Breach did not disclose anything new to the market that had not already been previously revealed

14

on September 7, 2017. Either argument, if successful, would materially reduce the Class's damages.

Moreover, Defendants would have continued to argue that Lead Plaintiff would not be able to disentangle the effect of information unrelated to the alleged fraud that the market learned at the same time as the alleged corrective disclosures. For example, Defendants argued that a significant portion of the declines in Equifax's stock price on the corrective disclosure dates reflect investors' reaction to the expected cost and impact of the data breach itself rather than the revelation of the Company's undisclosed cybersecurity deficiencies. Similarly, Defendants have argued that the data breach was the materialization of a publicly-disclosed risk that Equifax's systems could be breached, and that Lead Plaintiff and members of the Settlement Class would not be entitled to recover damages based on the full decline in Equifax's stock price upon the announcement that the data breach had occured. If Defendants prevailed on their loss-causation and damages arguments, recoverable damages would be eliminated or significantly reduced.

On all of these issues, Lead Plaintiff would have to prevail at several stages— at summary judgment and at trial, and if it prevailed on those, on the appeals that would likely follow—which could take years. The Settlement avoids these risks and

will provide a prompt and certain benefit to the Settlement Class rather than the mere possibility of a recovery after additional years of litigation and appeals.

The Settlement is also reasonable when considered in relation to the range of potential recoveries that might be recovered if Lead Plaintiff prevailed at trial, which was far from certain for the reasons noted above. Lead Plaintiff's expert estimates, after giving effect to certain of Defendants' arguments, that the maximum potential damages that could be realistically established at trial were approximately $588 million. Accordingly, the $149,000,000 Settlement represents approximately 25% of the realistic maximum recoverable damages for the Settlement Class. This is an outstanding result for Class Members given the risks of the litigation.

### (b)     The Proposed Settlement Does Not Unjustly Favor Any Class Member

The Court must also ultimately assess the Settlement's effectiveness in equitably distributing relief to members of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will likely earn approval. The proposed Plan of Allocation (the "Plan," set forth in full in the Notice) treats Class Members "equitably relative to each other" based on their transactions in publicly-traded Equifax common stock. *See* Fed. R. Civ. P. 23(e)(2)(D).

The Plan provides for distribution of the Net Settlement Fund to Class Members demonstrating a loss on their transactions in publicly-traded Equifax

16

common stock. The formula to apportion the Net Settlement Fund among Class Members, which was developed by Lead Plaintiff's damages expert in consultation with Lead Counsel, is based on the estimated amount of artificial price inflation in Equifax common stock during the Class Period that was allegedly caused by Defendants' misconduct.[5] Once the Claims Administrator has processed all submitted claims it will make distributions to eligible Class Members, until additional re-distributions are no longer cost effective. At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) approved by the Court.

The proposed Plan is thus a fair and reasonable, and merits approval.

### (c)   The Anticipated Request For Attorneys' Fees Is Reasonable

The Notice provides that Lead Counsel will apply for an award of attorneys' fees not to exceed 20% of the Settlement Fund, plus reimbursement of expenses not to exceed $1,000,000. A 20% fee award is reasonable and supported by case law in

---

[5] The calculation of "Recognized Loss Amounts" under the Plan will depend on when the claimant purchased and/or sold the shares, whether the claimant held the shares through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the shares when the claimant purchased, sold, or held them. Under the Plan, a claimant's "Recognized Claim" will be the sum of the claimant's Recognized Loss Amounts, and the Net Settlement Fund will be allocated to Class Members on a *pro rata* basis based on the relative size of their Recognized Claims.

this Circuit.[6] A 20% fee award would also befit the substantial risks that Lead Counsel undertook in expending enormous time, effort, and resources in pursuing this litigation and obtaining the excellent recovery achieved for the Settlement Class.

Lead Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion pursuant to the schedule set by the Preliminary Approval Order, and Class Members will have an opportunity to weigh in on the fee request before the Settlement Fairness Hearing, where the Court will decide what that fee should be. By granting preliminary approval, the Court ***does not in any way pass upon the reasonableness of any subsequent fee or expense application***, which will be decided *de novo* at the Settlement Fairness Hearing.

### (d)    Lead Plaintiff Has Identified All Agreements Made In Connection With The Settlement

In connection with the Settlement, the Parties have entered into a confidential Supplemental Agreement regarding requests for exclusion (opt-outs). *See* Stipulation ¶36. This agreement sets forth the conditions under which Equifax can terminate the Settlement if the opt-outs exceed an agreed-upon threshold.[7]

---

[6] *See, e.g., Carpenters Health & Welfare Fund. v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008) (awarding 21% of $137.5 million settlement fund in securities class action).

[7] These agreements are standard in securities class actions and do not impact the fairness of the Settlement. *See, e.g., Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by

18

## V.   CERTIFICATION OF THE SETTLEMENT CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE

In connection with final approval, the Court will be asked to certify the Settlement Class[8]—for settlement purposes only—pursuant to Rules 23(a) and 23(b)(3). At this stage, the Court should determine whether it "will likely be able to" certify the proposed Settlement Class at final approval. Fed. R. Civ. P. 23(e)(1)(B).

It is "well established" that "[a] class may be certified solely for the purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 2012 WL 4173458, at *2 (S.D. Fla. Sept. 19, 2012).[9] Lead Plaintiff submits that the Settlement Class

---

the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). The Supplemental Agreement is not being made public solely to avoid incentivizing opt-outs from leveraging the threshold to exact individual settlements. *See, e.g.*, *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007) (unnecessary to make similar agreements public). The Supplemental Agreement may be disclosed to the Court *in camera*.

[8] The Settlement Class is defined as:  all persons and entities who purchased or otherwise acquired publicly-traded Equifax common stock during the period from February 25, 2016 through September 15, 2017, inclusive (the "Class Period"), and who were damaged thereby, except for certain persons and entities who are excluded from the Settlement Class by definition. *See* Stipulation ¶(tt).

[9] A settlement class, like all other certified classes, must satisfy all of the requirements of Rules 23(a) and (b)(3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, the manageability concerns of Rule 23(b)(3) are not applicable for a settlement class. *See id*. at 593.

19

satisfies each of the requirements of Rules 23(a) and 23(b)(3) as set forth below.[10]

## A.    The Settlement Class Satisfies The Requirements Of Rule 23(a)

Certification is proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical []; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.    Numerosity Is Established

During the Class Period, Equifax common stock was actively traded on the New York Stock Exchange, with more than 119 million shares issued and outstanding and an average weekly trading volume of 4.6 million shares. Accordingly, the Settlement Class easily meets the numerosity requirement of Rule 23(a)(1). *See In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009) (numerosity satisfied where stock actively traded on NASDAQ and more than 46 million shares issued during class period); *see also* ECF No. 102-1, at 8-9.

---

[10] The Settlement Class definition is consistent with the class proposed in the Class Certification Motion. *See generally* ECF Nos. 102, 147. The discussion herein concerning satisfaction of the requirements of Rule 23 provides a brief summary of the arguments set forth in full in the Class Certification Motion, which is incorporated by reference herein.

### 2.      Commonality Is Established

The commonality requirement of Rule 23(a)(2) is met here, where Lead Plaintiff alleges that Defendants issued a series of material misstatements to investors, which artificially inflated the price of Equifax common stock. *See Netbank*, 259 F.R.D. at 664 ("Generally, where plaintiffs allege that the action is a result of a unified scheme to defraud investors, the element of commonality is met."); *see also* ECF No. 102-1, at 9-10.

### 3.      Typicality Is Established

Here, Union, like all other Class Members, purchased shares of Equifax common stock at prices alleged to have been artificially inflated due to Defendants' material misrepresentations and omissions, and Union and other Class Members allegedly suffered damages when the truth was revealed. Accordingly, the typicality requirement of Rule 23(a)(3) is satisfied. *See In re Internap Network Servs. Corp. Sec. Litig.*, 2012 WL 12878579, at *5 (N.D. Ga. Aug. 23, 2012) (typicality satisfied where plaintiff and the class purchased stock at prices inflated by misrepresentations, and were consequently damaged); *see also* ECF No. 102-1, at 10-11.

### 4.      Adequacy Is Established

The adequacy inquiry of Rule 23(a)(4) is satisfied where: (1) the proposed class representative's interests are consistent with vigorous pursuit of the class' claims and are not antagonistic to their interests; and (2) proposed class counsel are

21

qualified, experienced, and able to conduct the litigation. *In re Theragenics Sec. Litig.*, 205 F.R.D. 687, 695 (N.D. Ga. 2002); *see also* ECF No. 102-1, at 11-13. Lead Plaintiff is a sophisticated institutional investor that has and will continue to represent the interests of the Class fairly and adequately, and there is no antagonism or conflict of interest between Lead Plaintiff and the other Class Members. In addition, Lead Counsel is highly experienced in securities litigation and has successfully prosecuted many complex class actions. Thus, the adequacy requirement is also met here.

**B.** **The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)**

To certify a class under Rule 23(b)(3): (1) questions of law or fact common to the members of the class must "predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), and the class action mechanism must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

**1.** **Common Questions Predominate**

As the Supreme Court has found, predominance is a test "readily met" in cases alleging violations of the federal securities laws. *Amchem*, 521 U.S. at 625. Here, the numerous questions of law and fact common to Lead Plaintiff and the proposed Settlement Class, including whether Defendants' statements and omissions about

22

Equifax's cybersecurity practices were false and misleading, whether Defendants acted with scienter, and whether, and to what extent, Class Members suffered damages, predominate over individual questions. *See* ECF No. 102-1, at 14-24.

### 2. A Class Action Is A Superior Method Of Adjudicating Lead Plaintiff's Claims

The geographically dispersed nature of the Settlement Class, the inefficiency of multiple lawsuits, and the size of individual recoveries in comparison to the cost of litigation, strongly support a finding of superiority here. *See In re BellSouth Corp. Sec. Litig.*, 2006 WL 870362, at *4 (N.D. Ga. Apr. 3, 2016) (finding class action to be superior method for litigating a federal securities class action because "prosecution by individual shareholders would be prohibitive from both the individual plaintiff's and the court's perspectives."); *see also* ECF No. 102-1, at 24-25.

In light of the foregoing, all of the requirements of Rules 23(a) and (b) are satisfied, and the Settlement Class should be certified for purposes of settlement.[11]

---

[11] The Eleventh Circuit "requires a class definition to contain [] *objective criteria* that allow for class members to be identified in an *administratively feasible way*." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 680 (N.D. Ga. 2016) (emphasis in original). Here, the Settlement Class definition clearly delineates the Class's boundaries by the dates of their transactions in Equifax stock, and ascertaining its members will be easily administrable through investor records. *In re Vesta Ins. Grp., Inc., Sec. Litig.*, 1999 WL 34831475, at *1 (N.D. Ala. Oct. 25, 1999) (class members easily ascertained through defendant's transfer agent).

## VI.   THE PROPOSED FORM AND METHOD OF NOTICE ARE APPROPRIATE AND SHOULD BE APPROVED

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exs. 1 and 2 to the Preliminary Approval Order) to all Class Members who can be identified with reasonable effort, including through the records maintained by Equifax and/or its stock transfer agent, as well as posting the Notice and Claim Form on a website developed for the Settlement.[12] The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. The Notice will advise Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's fee and expense application. The Notice also will provide specifics on the date, time, and place of the Settlement Fairness Hearing and set forth the procedures for filing objections and requesting exclusion from the Settlement Class. In addition to the mailing of the Notice and Claim Form, the Summary Notice

---

[12] Lead Plaintiff requests that the Court approve retention of JND as the Claims Administrator for this case. JND was approved by this Court as the claims administrator for the Equifax customer class action (*In re: Equifax Inc. Customer Data Sec. Breach Litig.*, Case No. 1:17-md-2800-TWT (N.D. Ga.)) and has successfully administered numerous complex securities class action settlements.

24

will be published in the *Wall Street Journal* and transmitted over the *PR Newswire*.[13]

The proposed notice program represents the best notice practicable under the circumstances and satisfies the requirements of due process, Rule 23, and the PSLRA. *See, e.g., Coca-Cola*, 2008 WL 11336122, at *6-7 ("The dissemination of the Notice package by first-class mail to all Class Members who could be identified by reasonable effort, along with publication of the Summary Notice in national newspapers—supplemented by publication on the Internet web site of the Claims Administrator—more than satisfies Rule 23(c)(2)'s requirement of individual notice 'to all members who can be identified through reasonable effort.'").

Accordingly, Lead Plaintiff respectfully submits that the proposed notice and related procedures are appropriate and should be approved.

## VII.  CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully requests that the Court enter the Parties' agreed-upon proposed Preliminary Approval Order, attached to the Motion as Ex. 3, which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the form and manner of notice to the Class; and (iii) a hearing date and time to consider final approval of the Settlement and related matters.

---

[13] The Parties have also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq. See* Stipulation, ¶20.

25

Dated: February 13, 2020

Respectfully submitted,

*/s/ James A. Harrod*

James A. Harrod
(admitted *pro hac vice*)
Abe Alexander
(admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jim.harrod@blbglaw.com
abe.alexander@blbglaw.com

*Counsel for Lead Plaintiff*
*Union Asset Management Holding AG*
*and Lead Counsel for the Class*

H. Lamar Mixson
Georgia Bar No. 514012
Amanda Kay Seals
Georgia Bar No. 502720
**BONDURANT MIXSON &
ELMORE LLP**
1201 West Peachtree Street NW
Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
mixson@bmelaw.com
seals@bmelaw.com

*Local Counsel for Lead Plaintiff*
*Union Asset Management Holding AG*

26

## **RULE 7.1(D) CERTIFICATION**

I hereby certify that this document has been prepared with 14 point Times New Roman, one of the font and point selections approved by the Court in Local Rule 5.1(C).

/s/ James A. Harrod
James A. Harrod