**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE EQUIFAX INC. SECURITIES LITIGATION** | Consolidated Case No. 1:17-cv-03643-TWT |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.  PRELIMINARY STATEMENT .................................................................... 1

II.  ARGUMENT ................................................................................................ 4

    A.  The Appropriate Method For Awarding Attorneys' Fees Is Based on a Reasonable Percentage of the Recovery ........................... 4

    B.  The Requested Fee of 20% is Fair and Reasonable ........................... 5

    C.  Lead Plaintiff's Endorsement of the Requested Fee Supports Its Approval ............................................................................................... 7

    D.  The Relevant Factors Confirm That the Requested Fee is Fair and Reasonable ................................................................................... 8

        1.  The Time and Labor Required .................................................. 9

        2.  The Novelty and Difficulty of the Issues ................................ 12

        3.  The Skill, Experience, Reputation and Ability of the Attorneys ................................................................................ 16

        4.  The Preclusion of Other Employment ..................................... 17

        5.  The Customary and Contingent Nature of the Fee .................. 17

        6.  The Amount Involved and Results Achieved .......................... 19

        7.  The Undesirability of the Case ................................................ 20

        8.  Awards in Similar Cases ......................................................... 21

        9.  The Time Required to Reach Settlement .................................. 21

        10.  The Reaction of the Class ...................................................... 21

i

E.    Lead Counsel's Request for Payment of Litigation Expenses is
      Fair and Reasonable ............................................................................22

F.    Lead Plaintiff's Request for Payment of Costs Directly Related
      to Its Representation of the Class Is Fair and Reasonable ..................24

CONCLUSION .......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
No. 03-1519, (D.N.J. Jan. 30, 2013)....................................................................7

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec.*
*Act (ERISA) Litig.*,
772 F.3d 125 (2d Cir. 2014) ...............................................................................24

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
148 F. Supp. 3d 303 (S.D.N.Y. 2015) ..................................................................7

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .....................................................18

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988).........................................................................18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...............................................................................................5

*In re Broadcom Corp. Sec. Litig.*,
2005 WL 8153006 (C.D. Cal. Sept. 12, 2005) .....................................................7

*In re Brocade Sec. Litig.*,
No. 05-cv-2042, (N.D. Cal. Jan. 26, 2009)...........................................................7

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) .....................................................................passim

*Carpenters Health & Welfare Fund. v. Coca-Cola Co.*,
587 F. Supp. 2d 1266 (N.D. Ga. 2008)..........................................................6, 22

*In re Carter's, Inc. Sec. Litig*,
2012 WL 12877943 (N.D. Ga. May 31, 2012)......................................................8

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011)...............................................................17

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ............................................12, 16

*David v. Am. Suzuki Motor Corp.*,
  2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ....................................................16

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ..................................................................5, 19

*In re Equifax Inc. Customer Data Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ..............................................passim

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2011) ...............................................................5, 9, 21

*In re Flowers Foods, Inc. Sec. Litig.*,
  2019 WL 6771749 (M.D. Ga. Dec. 11, 2019)...................................................25

*In re Friedman's, Inc. Sec. Litig.*,
  2009 WL 1456698 (N.D. Ga. May 22, 2009)..............................................17, 19

*Ingram v. Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) .....................................................................12

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) .............................................................................9

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
  2015 WL 5626414 (N.D. Ala. Sept. 14, 2015)...................................................6

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...............................................................................................................25

*Medina, et al. v. Clovis Oncology, Inc., et al.*,
  No. 1:15-cv-02546-RM-MEH (D. Colo. Oct. 26, 2017)....................................7

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)..........................................................................................11

iv

*In re NetBank, Inc. Sec. Litig.*,
   2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ..............................................12, 22

*Norman v. Hous. Auth. of City of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) .........................................................................17

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................19

*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...............................................................12

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ........................................................12, 18, 20

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .........................................................................18

*Schwartz v. TXU Corp.*,
   No. 02-2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................................7

*Silverman v. Motorola, Inc.*,
   2012 WL 1597388 (N.D. Ill. May 7, 2012).........................................................7

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (S.D. Fl. Nov. 29, 2001)...................................................6

*In re Synovus Fin. Corp.*,
   2014 WL 12756149 (N.D. Ga. Nov. 18, 2014) ..................................................25

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ...................................................20

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) .....................................................................5, 11

*In re Wilmington Trust Sec. Litig.*,
   No. 10-cv-00990-ER (D. Del. Nov. 19, 2018) .....................................................7

**STATUTES**

15 U.S.C. § 78u-4(a)(4) ...........................................................................24

**OTHER AUTHORITIES**

Cornerstone Research, *Securities Class Action Settlements, 2019
    Review and Analysis* (2020).............................................................20

Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") respectfully submits this memorandum of law in support of its motion, on behalf of Plaintiff's Counsel, for an award of attorneys' fees in the amount of 20% of the Settlement Fund, net of Court-approved Litigation Expenses. Lead Counsel also seeks $659,925.13 for Litigation Expenses incurred by Plaintiff's Counsel and $121,375.00 for costs incurred by Lead Plaintiff Union Asset Management Holding AG ("Union") directly related to its representation of the class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## I.    PRELIMINARY STATEMENT

The proposed Settlement provides for a cash payment of $149,000,000 in exchange for the resolution of all claims in the Action and represents an excellent result. As noted in the accompanying Settlement Memorandum, this Settlement, if approved, would be the largest securities class action recovery in this District, and would rank as the fourth largest securities class action recovery in the history of the

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated February 12, 2020 (the "Stipulation") (ECF No. 159-2) or in the Declaration of James A. Harrod in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Harrod Declaration" or "Harrod Decl."), filed herewith. Citations to "¶ __" in this memorandum refer to paragraphs in the Harrod Declaration and citations to "Ex. __" refer to exhibits in the Harrod Declaration.

Eleventh Circuit. This recovery was achieved after over two years of hard-fought litigation against highly skilled defense counsel and extensive negotiations by experienced and skillful attorneys specializing in securities litigation. In undertaking this litigation on a fully contingent basis, Plaintiff's Counsel faced numerous challenges to proving liability, loss causation, and damages that raised serious risks of no recovery, or a significantly lesser recovery than the Settlement.

The prosecution and settlement of this litigation required extensive efforts on the part of Plaintiff's Counsel. As detailed in the Harrod Declaration,[2] Plaintiff's Counsel vigorously pursued this litigation from its outset by, among other things, conducting a comprehensive investigation into the alleged fraud; preparing a detailed, 186-page complaint based on that investigation; successfully opposing, in large part, Defendants' motion to dismiss the complaint; briefing a motion for class certification, which included the exchange of detailed expert reports, the depositions of the Parties' experts, and the depositions of two Union representatives; conducting substantial fact discovery, which included the review of over 1 million pages of

---

[2] The Harrod Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for detailed descriptions of, *inter alia*: the nature of the claims asserted in the Action (¶¶ 18); the history, prosecution, and settlement of the Action (¶¶ 19-81); the risks and uncertainties of continued litigation of Action (¶¶ 82-112); and the services Plaintiffs' Counsel provided for the benefit of the Settlement Class (¶¶ 9, 137).

2

documents produced by Defendants and third parties; and engaging in extensive settlement negotiations, which included participation in a full-day mediation session, under the auspices of an experienced and highly respected mediator, former U.S. District Court Judge Layn R. Phillips, and months of follow-up discussions.

The Settlement achieved through counsel's efforts is a particularly favorable result considering the significant hurdles that Lead Plaintiff would have had to overcome to prevail in this complex securities fraud case, including risks associated with establishing liability, loss causation, and damages in the Action. These risks are detailed in the Harrod Declaration at paragraphs 82 to 112 and are summarized in the Settlement Memorandum and below. Despite these risks, Plaintiff's Counsel collectively invested over 42,000 hours over more than two years to achieve the Settlement, all on a contingent-fee basis with no assurance of ever being paid.

As compensation for Plaintiff's Counsel's considerable efforts on behalf of the Settlement Class and the risks of nonpayment they faced in prosecuting the Action on a contingent basis, Lead Counsel seeks attorneys' fees in the amount of 20% of the Settlement Fund, net of Court-approved Litigation Expenses. The requested 20% fee is substantially lower than the "benchmark" 25% fee established for percentage fee awards in the Eleventh Circuit and well within the range of fees that courts in this Circuit have awarded in securities and other complex class actions

with comparable recoveries on a percentage basis. The requested fee also represents a multiplier of 1.59 on Plaintiff's Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with significant contingency risks such as this one. In addition, the expenses for which Plaintiff's Counsel seek payment were reasonable and necessary for the successful prosecution of the Action.

The application for fees and expenses has the full support of Lead Plaintiff. *See* Declaration of Jochen Riechwald on behalf of Union (Ex. 2) (the "Riechwald Decl."), at ¶¶ 11-13. Lead Plaintiff is a sophisticated institutional investor that actively supervised the Action and has endorsed the requested fee as fair and reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation. *Id*. In addition, while the deadline set by the Court for Class Members to object has not yet passed, to date, no objections to the request for fees and expenses have been received. ¶¶ 150, 162.

For the reasons discussed below and in the Harrod Declaration, Lead Counsel respectfully submits that the requested fees and expenses are fair and reasonable.

## II.    ARGUMENT

### A.    The Appropriate Method For Awarding Attorneys' Fees Is Based on a Reasonable Percentage of the Recovery

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to be compensated for their services, and

4

that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 353 (N.D. Ga. 1993) (fees are awarded "to compensate successful attorneys" for the "benefits they have achieved . . .  the risks . . . taken in prosecuting a long and complex case," and "the hours and expenses . . . invested in the case.").

In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I*, 946 F.2d at 774; *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999).

### B.    The Requested Fee of 20% is Fair and Reasonable

Lead Counsel seeks a fee award of 20% of the Settlement Fund, net of Plaintiff's Counsel's Court-awarded expenses.  The Eleventh Circuit has established 25% of the settlement fund as a "benchmark" (and presumptively reasonable) fee award in common-fund cases.  *See Faught*, 668 F.3d at 1243 ("25% is generally recognized as a reasonable fee award in common fund cases"); *Camden I*, 946 F.2d at 774-75 ("[t]he majority of common fund fee awards fall between 20% to 30% of

the fund," and district courts consider the middle of that range—25%—as a "benchmark" that "may be adjusted in accordance with the individual circumstances of each case"); *In re Equifax Inc. Customer Data Breach Litig.*, 2020 WL 256132, at *31 (N.D. Ga. Mar. 17, 2020) ("*Equifax Customer Data Breach*") ("[t]ypically, awards range from 20% to 30%, and 25% is considered the "benchmark" percentage" in common fund cases) (citing *Camden I*). Thus, the requested fee is significantly less than the benchmark for percentage fees in common fund cases.

A review of percentage fee awards approved by Courts within this Circuit in complex common fund cases involving comparable recoveries confirms that the 20% fee sought by Lead Counsel is fair and reasonable. *See, e.g., Carpenters Health & Welfare Fund. v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008) (awarding 21% of $137.5 million settlement fund in securities class action); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1337 (S.D. Fl. Nov. 29, 2001), No. 98-cv-08258, ECF No. 897 at 3 (S.D. Fla. Aug. 5, 2002), and ECF No. 907 at 11 (S.D. Fla. Aug. 9, 2002), ECF No. 907 (collectively awarding 25% of $141 million settlement fund in securities class action); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala.

Sept. 14, 2015) (awarding 30% of $90 million settlement fund).[3]  In addition, the

20% fee request is consistent with fees awarded by courts in other Circuits in

similarly sized securities class action settlements.[4]

In sum, when judged against the Eleventh Circuit benchmark, and compared

to fees awarded in class action settlements of similar magnitude, the requested 20%

fee is fair and reasonable.

### C.    Lead Plaintiff's Endorsement of the Requested Fee Supports Its Approval

Lead Plaintiff is a sophisticated institutional investor that took an active role

in the litigation and closely supervised the work of Lead Counsel.  *See* Riechwald

---

[3] *See also Equifax Customer Data Breach*, 2020 WL 256132, at *31 (finding fee award of $77.5 million, representing 20.36% of $380.5 million non-reversionary fund, to be reasonable under controlling Eleventh Circuit authority).

[4] *See, e.g.*, *In re Wilmington Trust Sec. Litig.*, No. 10-cv-00990-ER, ECF No. 842 at 2 (D. Del. Nov. 19, 2018) (awarding 28% of $210 million settlement); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 148 F. Supp. 3d 303, 305 (S.D.N.Y. 2015) (awarding 25% of $180 million settlement); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519, ECF No. 405 at 4 (D.N.J. Jan. 30, 2013) (awarding 27.5% of $164 million settlement); *Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (awarding 27.5% of $200 million settlement fund), aff'd, 739 F.3d 956, 958-59 (7th Cir. 2013); *In re Brocade Sec. Litig.*, No. 05-cv-2042, ECF No. 496-1 at 13 (N.D. Cal. Jan. 26, 2009) (awarding 25% of $160 million settlement); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153006, at *4 (C.D. Cal. Sept. 12, 2005) (awarding 25% of $150 million settlement); *Schwartz v. TXU Corp.*, No. 02-2243, 2005 WL 3148350, at *24-34 (N.D. Tex. Nov. 8, 2005) (awarding 22% of $149.75 million settlement); *Medina, et al. v. Clovis Oncology, Inc., et al.*, No. 1:15-cv-02546-RM-MEH, ECF No. 177 at 2 (D. Colo. Oct. 26, 2017) (awarding 22.5 % of $142 million settlement, net of expenses).

Decl. ¶¶ 2-5.  Lead Plaintiff has approved the requested fee as fair and reasonable in light of the work performed, the recovery obtained for the Class, and the risks undertaken by counsel. *Id* ¶¶ 11-13.  In addition, the fee requested is consistent with the retainer agreement entered into between Lead Counsel and Lead Plaintiff at the outset of the litigation. *Id.*  Lead Plaintiff's endorsement of the fee supports its approval. *See In re Carter's, Inc. Sec. Litig,*, 2012 WL 12877943, at *2 (N.D. Ga. May 31, 2012) (approving fee request that was "reviewed and approved as fair and reasonable by Lead Plaintiff, a sophisticated institutional investor that was directly involved in the prosecution and resolution of the claims and who has a substantial interest in ensuring that any fees paid to Lead Plaintiff's Counsel are duly earned and not excessive").

### D.    The Relevant Factors Confirm That the Requested Fee is Fair and Reasonable

In *Camden I*, the Eleventh Circuit recommended that district courts consider several factors in determining whether a requested percentage fee award is reasonable, including:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

8

"undesirability" of the case; (11) the nature and length of the professional
relationship with the client; and (12) awards in similar cases.

946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714,

717-19 (5th Cir. 1974)).  A court may also properly consider "the time required to

reach a settlement, whether there are any substantial objections by class members or

other parties to the settlement terms or the fees requested by counsel . . . and the

economics involved in prosecuting a class action."  *Id*. at 775.

Although the Eleventh Circuit has since stated that a full analysis of the

*Johnson* and other factors is only necessary if the fee request exceeds 25%, *see*

*Faught*, 668 F.3d at 1242, Lead Counsel nonetheless urges the Court to consider

these factors, as they provide strong support for approval of the 20% fee request.

### 1.    The Time and Labor Required

The time and diligent effort expended by Plaintiff's Counsel to achieve the

Settlement supports the requested fee.  Lead Counsel committed extensive resources

to developing the challenging aspects of Lead Plaintiff's claims and overcoming the

obstacles introduced by Defendants over more than two years of hard-fought

litigation.  As discussed in greater detail in the Harrod Declaration, Lead Counsel,

among other things: (i) conducted a comprehensive factual investigation of the

claims at issue in the Action (¶¶ 39-40); (ii) drafting the detailed 186-page Complaint

(¶ 41);  (iii) successfully defeating Defendants' joint motion to dismiss the

9

Complaint, in large part, through briefing and oral argument (¶¶ 42-53); (iv) successfully opposing Defendant Equifax's motion for clarification of the Court's order on the motion to dismiss, and Defendants' joint motion to certify questions related to the Court's motion to dismiss order for interlocutory review pursuant to 28 U.S.C. 1292(b) (¶¶ 54-61); (v) successfully moving to modify the PSLRA discovery stay (¶¶ 34-38); (vi) preparing and filing Lead Plaintiff's motion for class certification, which included the submission of an expert report on market efficiency and the availability of class-wide damages methodologies, defending the depositions of Lead Plaintiff's representatives and expert, deposing Defendants' expert, and the submission of a rebuttal expert report (¶¶ 71-74); (vii) undertaking substantial fact discovery efforts, including producing over 28,150 pages of documents from Lead Plaintiff, drafting and serving extensive discovery requests on Defendants and document subpoenas upon several dozen relevant nonparties, responding to document requests served by Defendants, serving and responding to interrogatories and litigating discovery disputes, and reviewing and analyzing over 1 million pages of documents produced by Defendants and third parties (¶¶ 62-70); (viii) consulting extensively throughout the litigation with experts regarding loss-causation, damages, and cybersecurity issues (¶¶ 40, 78); (ix) engaging in extensive, arm's-length settlement negotiations, including both an in-person mediation,

10

followed by months of negotiations through Judge Phillips (¶¶ 75-79); and (x) drafting and negotiating the Settlement Stipulation and related settlement documentation (¶ 80).

In total, Plaintiff's Counsel expended over 42,200 hours in this litigation through May 15, 2020, with a resulting lodestar of $18,633,444.50.  ¶ 140.[5]  The time and labor expended by Plaintiff's Counsel amply support the requested fee.

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 20% award.  *See, e.g.*, *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison.").  Here, the requested fee of 20% of the $149 million Settlement (net of expenses), which equates to approximately $29.644 million, plus interest earned, represents a multiplier of approximately 1.59 on Plaintiff's Counsel's lodestar.[6]  Given that multipliers between 2 and 5 are commonly awarded

---

[5] This lodestar amount is based on Plaintiff's Counsel's current hourly rates.  The Supreme Court has approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest.  *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)

[6] The multiplier is calculated by dividing the $29.644 million fee request by the $18,633,444.50 in lodestar that Plaintiff's Counsel incurred.  The actual realized multiplier will decline over time, as Plaintiff's Counsel will devote additional attorney time to preparing for the Settlement Fairness Hearing, overseeing the

in complex class actions with substantial contingency risks, the multiplier requested here confirms the reasonableness of the requested fee.  *See, e.g.*, *Equifax Customer Data Breach*, 2020 WL 256132, at *39 (awarding fee representing 2.62 multiplier as "consistent with multipliers approved in other cases"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 and n.4 (N.D. Ga. Oct. 26, 2012) (multiplier of 4 times lodestar is "well within" the accepted range); *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (lodestar multipliers "in large and complicated class actions" range from 2.26 to 4.5) (citations omitted); *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4).

## 2.    The Novelty and Difficulty of the Issues

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law, *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992), and "securities class action litigation is 'notably difficult and notoriously uncertain.'"  *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at * 3 (N.D. Ga. Nov. 9, 2011).  This Action was no exception.

---

processing of Claims by the Claims Administrator, and overseeing the distribution of the Settlement proceeds to Settlement Class Members with valid Claims.

As further detailed in the Harrod Declaration, Lead Plaintiff's claims faced a number of substantial challenges to establishing liability and proving damages in this Action. Defendants contested their liability on falsity, materiality, and scienter grounds and raised numerous issues regarding loss causation and damages.

*First*, Lead Plaintiff's claims would have faced substantial challenges in proving that Defendants' statements about Equifax's cybersecurity were actionable under the federal securities laws. ¶¶ 89-96. For example, Defendants would have continued to argue that their statements about compliance with applicable data protection laws and commitment to cybersecurity were not false. In support of their position, Defendants would have continued to point to the fact that Equifax was expending significant effort and money on cyber-defenses, which made certain of their statements regarding cybersecurity true. ¶ 95. Defendants would have also continued to argue that statements Lead Plaintiff alleged to be misleading were (a) immaterial "puffery"—vague statements of corporate optimism upon which no reasonable investor would rely (¶¶ 90-92), or (b) "mismanagement" (¶¶ 94-95).

*Second*, Lead Plaintiff faced challenges in proving that Defendants made the alleged false statements with scienter: that they acted with intent or recklessness. For example, Defendants would argue that the absence of proof of Defendants' knowledge that their public statements were misleading, when combined with

13

Defendants' argument that the Company would be able to show that it had a reasonable cybersecurity program in place and was making efforts to improve the program, do not establish the requisite scienter to support a securities fraud claim. ¶ 100.  Similarly, Defendants would have argued that there was insufficient evidence directly indicating that Defendant Smith had knowledge of Equifax's cybersecurity deficiencies and non-compliance, which may have undermined Plaintiff's efforts to establish both his and Equifax's scienter.  ¶¶ 98-99.

While many of these arguments were made unsuccessfully by Defendants on their motion to dismiss, when the Court was required to accept all allegations in the Complaint as true, there was a significant possibility that Defendants could have succeeded in these arguments at subsequent stages of the litigation when Lead Plaintiff bore the burden of proof.  On all these issues, Lead Plaintiff would have to prevail at several stages—on a motion for summary judgment and at trial, and if it prevailed on those, on the appeals that would likely follow.

*Finally*, even assuming that Lead Plaintiff overcame each of the above risks, Lead Plaintiff would have confronted considerable additional challenges in establishing loss causation and damages.  Defendants have argued and would have continued to argue that the Class Period should start later, in March 2017, and end earlier, on September 7, 2017. Specifically, Defendants contend the Class Period

14

should start no earlier than March 2017 (rather than in February 2016) when Defendants are alleged to have received a report from an outside consulting firm (Mandiant) making certain observations regarding aspects of Equifax's cybersecurity program. ¶¶ 102-104. Defendants also contend that the Class Period should end on September 7, 2017, the date of Equifax's initial disclosure of the Data Breach, not September 15, 2017, because the alleged corrective disclosures made after the initial disclosure of the Data Breach did not disclose anything new to the market that had not already been previously revealed on September 7, 2017. *Id.* Defendants would also have argued that the declines following each of the alleged corrective disclosures were caused, at least in part, by information unrelated to the fraud, and that any decline attributable to such news needed to be "disaggregated" from damages. ¶ 105. Finally, Defendants would have argued that Lead Plaintiff's loss causation theory was based on a materialization-of-the-risk scenario that was incompatible with the finding of *any* classwide damages. ¶ 106.

These arguments presented significant risks to the Settlement Class that they would not be able to recover at all, or recover substantially reduced damages.

Thus, Lead Counsel faced multiple difficult and significant obstacles in prosecuting this Action. However, notwithstanding these obstacles, Lead Counsel

achieved an excellent result for the Settlement Class.  Success in the face of these obstacles strongly supports the requested fee award.

### 3.    The Skill, Experience, Reputation and Ability of the Attorneys

Under these factors, the Court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation, and ability of the attorneys" involved.  *Camden I*, 946 F.2d at 772 n.3.

From the inception of the Action, Lead Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Settlement Class.  As noted above, this case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised by Defendants during the litigation.  Lead Counsel practices extensively in the highly challenging field of complex class action litigation and is one of the nation's leading securities class action litigation firms.  *See* ¶ 142 and Ex. 3A-3.  Without question, Lead Counsel's skills and experience were an important factor in obtaining the excellent result achieved in this Settlement.

This Court should also consider "the quality of the opposition" the plaintiff's attorneys faced.  *See Columbus Drywall*, 2012 WL 12540344, at *4.  Here, Equifax,

16

Gamble, Ploder, and Dodge were represented by King & Spalding LLP and Defendant Smith was represented by Quinn Emanuel Urquhart & Sullivan LLP and Troutman Sanders LLP, each nationally prominent defense firms that vigorously contested the Action. Lead Counsel's ability to obtain a favorable Settlement despite this formidable legal opposition confirms the quality of the representation that Lead Counsel provided. Accordingly, this factor also supports the fee requested.

### 4. The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case—over 42,200 hours (¶ 140)—was time that Plaintiff's Counsel could not devote to other matters. Moreover, Plaintiff's Counsel expended this time and effort without any assurance that they would be successful or that they would ever be compensated for their hard work. Accordingly, this factor also supports the requested fee.

### 5. The Customary and Contingent Nature of the Fee

The "customary" fee in a class action lawsuit of this nature is a contingency fee because virtually no class member possesses a sufficiently large stake in the litigation to justify paying attorneys on an hourly basis. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1298-99 (11th Cir. 1988).

The contingent nature of Plaintiff's Counsel's fees should be given substantial weight in assessing the requested fee award. *See In re Friedman's, Inc. Sec. Litig.*,

2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("[T]he contingent fee risk is an important factor in determining the fee award.").  Courts have consistently recognized that the risk that class counsel could receive no recovery is a major factor in determining the award of attorneys' fees. *See Ressler*, 149 F.R.D. at 654-55 ("The substantial risks of this litigation abundantly justify the fee requested . . . .").  "A contingency fee arrangement often justifies an increase in the award of attorneys' fees," *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), "because if the case is lost a lawyer realizes no return for investing time and money in the case."  *Equifax*, 2020 WL 256132, at *33.

Success in contingent litigation such as this is never assured.  In other securities class actions, plaintiffs' counsel have suffered major defeats after years of litigation and investing millions of dollars of time but received no compensation at all.  Even a victory at trial is not a guarantee of success.[7]  As noted above, Lead Plaintiff's claims faced multiple hurdles that could have precluded or substantially limited any recovery.  Indeed, because the fee in this matter was entirely contingent,

---

[7] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997), *reh'g en banc denied*, 129 F.3d 617 (11th Cir. 1997) (overturning $81 million jury verdict); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning estimated $42 million jury verdict for plaintiff class, and granting judgment as a matter of law to defendants).

the only certainties were that there would be no fee without a successful result, and that such a result would be realized, if at all, only after considerable and difficult effort. Thus, the substantial risks of the Action also justify the requested fee.

### 6.    The Amount Involved and Results Achieved

"It is [also] well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Friedman's*, 2009 WL 1456698, at *3 (alteration in original); *see Domestic Air*, 148 F.R.D. at 351 ("The most important element in determining" class counsel's fee "is the result obtained for the class through the efforts of such counsel.").

As noted above, the excellent result obtained here was accomplished despite the substantial difficulties of proving liability for securities fraud and the risks of establishing loss causation and damages in this case. The $149 million cash Settlement that Lead Counsel obtained represents 25% of the Settlement Class's likely ***maximum*** recoverable damages of approximately $588 million. *See* ¶¶ 6, 114.[8] Moreover, the $149 million Settlement far exceeds the inflation-adjusted median of $6.3 million in securities class action settlements in the Eleventh Circuit

---

[8] *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (finding that settlement with recovery of "approximately 9% of the possible damages," was substantially higher than the average recovery in securities class action settlements and weighed in favor of a higher fee).

from 2010 through 2019, representing an average recovery of 5.2% of estimated damages. *See* Cornerstone Research, *Securities Class Action Settlements, 2019 Review and Analysis* (2020) at 20. In sum, the significant recovery obtained in this Action also supports approval of the requested fee.

### 7.    The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. There are risks inherent in financing and prosecuting complex litigation of this type. When Lead Counsel undertook representation of Lead Plaintiff in this Action, it was with the knowledge that Lead Counsel would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Apart from the risk of no recovery, deferring fees in an undertaking like this while at the same time advancing hundreds of thousands of dollars in expenses would deter many firms. *See Thorpe v. Walter Inv. Mgmt. Corp.,* 2016 WL 10518902, at *11 (S.D. Fla. Oct. 17, 2016); *Ressler*, 149 F.R.D. at 655. In fact, unlike many similar securities class actions where multiple investors vigorously compete to be appointed to lead the litigation, Union's Lead Plaintiff motion was ultimately unopposed, likely reflecting that other investors and their counsel perceived the prospects of the case as risky and uncertain. Thus, the "undesirability" of the case weighs in favor of the requested fee.

### 8.    Awards in Similar Cases

As discussed in Section II.B., above, Lead Counsel's requested 20% fee is substantially less than the presumptively fair and reasonable 25% benchmark applied to class action cases in this Circuit.  *See Faught*, 668 F.3d at 1242; *Camden I*, 946 F.2d at 774-75.  Thus, this factor supports the reasonableness of the requested fee.

### 9.    The Time Required to Reach Settlement

A substantial amount of time was required to resolve the Action and the Settlement was achieved only after more than two years of litigation.  This was not a case, for example, where the parties reached an early settlement—to the contrary, before the Parties reached any agreement to settle, Lead Counsel vigorously opposed Defendants' motion to dismiss, conducted significant discovery, moved for class certification, and engaged in substantial settlement and mediation efforts.  ¶¶ 39-79. The significant amount of time expended on the prosecution of the claims and the negotiation of the Settlement, including the over 42,200 hours Plaintiff's Counsel dedicated to the Action, further supports the requested fee award.

### 10.    The Reaction of the Class

Through May 21, 2020, more than 183,800 copies of the Notice had been mailed to potential Settlement Class Members and their nominees, and the Summary Notice was published in the *Wall Street Journal* and over the *PR Newswire*.  *See*

21

Declaration of Luiggy Segura submitted by the Court-approved Claims Administrator, JND Legal Administration (Ex. 2) (the Segura Decl."), at ¶¶ 2-7. The Notice advised Class Members that Lead Counsel would apply for fees of up to 20% of the Settlement Fund. While the deadline for filing objections is not until June 5, 2020, to date, no objections to the requested fee have been received. ¶150.[9]

### E.    Lead Counsel's Request for Payment of Litigation Expenses is Fair and Reasonable

Lead Counsel also requests payment of $659,925.13 for the expenses incurred by Plaintiff's Counsel in prosecuting the Action. It is well-established that "class counsel's reasonable and necessary out-of-pocket expenses should be reimbursed." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008); *see also NetBank*, 2011 WL 1335322, at *4 ("It has long been held that '"plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action."'").

The expenses for which Lead Counsel seeks payment are those necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, costs for experts, an electronic document repository and database, on-line research, mediation fees, court fees, telephone, photocopying,

---

[9] Should any objections be filed, they will be addressed in Lead Counsel's reply papers to be filed on or before June 19, 2020.

postage, and out-of-town travel. ¶¶ 154-159. A complete breakdown of the expenses incurred by Plaintiff's Counsel in each category is included in Exhibit 4 to the Harrod Declaration. These expense items were charged separately by Plaintiff's Counsel, and such charges were not duplicated in the firms' hourly rates.

The Notice informed potential Class Members that Lead Counsel would apply for payment of Litigation Expenses in an amount not to exceed $1,000,000. *See* Notice ¶¶ 5, 77. The total amount of Litigation Expenses requested by Lead Counsel is $781,300.13, which includes $659,925.13 for expenses incurred by Plaintiff's Counsel and $121,375.00 for costs incurred by Lead Plaintiff in its representation of the Settlement Class, an amount substantially below the figure listed in the Notice. To date, there has been no objection to the request for expenses.

Because the expenses incurred by Plaintiff's Counsel are of the type for which payment is routinely ordered in common fund cases and were essential to the successful prosecution and resolution of the Action, the requested expenses should be approved. *See Equifax Customer Data Breach*, 2020 WL 256132, at *40 (awarding expenses for "court reporter fees; document and database reproduction and analysis; e-discovery costs; expert witness fees; travel for meetings and hearings; paying the mediator; and other customary expenditures" and finding such expenses "are reasonable and were necessarily incurred on behalf of the class").

23

**F.     Lead Plaintiff's Request for Payment of Costs Directly Related to Its Representation of the Class Is Fair and Reasonable**

In connection with its request for reimbursement of Litigation Expenses, Lead Counsel also seeks payment for the costs and expenses incurred directly by Union in its representation of the Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, Union seeks an award of $121,375.00 for the time dedicated by Dr. Carsten Fischer, General Counsel of Union, and Jochen Riechwald, Assistant General Counsel of Union, and others at Union, in supervising and participating in the Action. *See* Riechwald Decl. ¶¶ 14-16. Union, through Dr. Fischer and Mr. Riechwald, took an active role in the litigation, including, among other things, reviewing and commenting on pleadings and motion papers filed in the Action; searching for and gathering documents for production; preparing and sitting for their depositions in connection with Lead Plaintiff's class certification motion; consulting with Lead Counsel regarding the settlement negotiations; and evaluating and approving the Settlement. *Id.* ¶¶ 6-7.

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class. *See, e.g.*, *In re Bank*

24

*of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of over $450,000 to representative plaintiffs for time spent by their employees on the action); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) (awarding $214,657 to lead plaintiffs); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *2 (M.D. Ga. Dec. 11, 2019) (awarding plaintiffs $10,000 each); *In re Synovus Fin. Corp.*, 2014 WL 12756149, at *1 (N.D. Ga. Nov. 18, 2014) (awarding a total of $15,200 to two institutional lead plaintiffs).

The requested award sought by Lead Plaintiff is reasonable under the PSLRA based on the excellent result generated through its supervision and involvement in the Action, and should be granted.

## CONCLUSION

For the reasons discussed above and in the Harrod Declaration, Lead Counsel respectfully request that the Court: (i) award attorneys' fees to all Plaintiff's Counsel in the amount of 20% of the Settlement Fund, net of Court-approved Litigation Expenses; (ii) award $659,925.13 in payment of the reasonable Litigation Expenses that Plaintiff's Counsel incurred in prosecuting the Action; and (iii) award $121,375.00 as payment for the costs incurred by Lead Plaintiff directly relating to its representation of the Settlement Class.

Dated: May 22, 2020        Respectfully submitted,


*/s/ James A. Harrod*

James A. Harrod
(admitted *pro hac vice*)
Abe Alexander
(admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jim.harrod@blbglaw.com
abe.alexander@blbglaw.com

*Counsel for Lead Plaintiff*
*Union Asset Management Holding AG*
*and Lead Counsel for the Class*

H. Lamar Mixson
Georgia Bar No. 514012
Amanda Kay Seals
Georgia Bar No. 502720
**BONDURANT MIXSON &**
**ELMORE LLP**
1201 West Peachtree Street NW
Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
mixson@bmelaw.com
seals@bmelaw.com

*Local Counsel for Lead Plaintiff*
*Union Asset Management Holding AG*

26

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with 14 point Times New Roman, one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ James A. Harrod*
James A. Harrod

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2020, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

*/s/ James A. Harrod*
James A. Harrod