IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2800 1:17-md-2800-TWT ALL CASES |

## OPINION AND ORDER

This is an MDL proceeding arising out of the Equifax data breach litigation. It is before the Court on Class Counsel's Motion for Immediate Injunctive Relief to Prevent Evasion and Violation of this Court's Jurisdiction and Orders [Doc. 1249]. For the reasons set forth below, Class Counsel's Motion for Immediate Injunctive Relief to Prevent Evasion and Violation of this Court's Jurisdiction and Orders [Doc. 1249] is GRANTED.

## I.    Background

On September 7, 2017, Equifax Inc. announced a data breach that it determined had impacted the personal information of about 147 million Americans. More than 300 class actions, filed against Equifax by its consumers and investors, were consolidated and transferred to this Court in multidistrict litigation (the "Equifax MDL"). On April 2, 2019, the consumer class and Equifax informed the Court that they had reached a binding settlement that resolved all claims arising out of the data breach (the "Settlement Agreement"). On March 17, 2020, the Court entered an order granting final approval to the Settlement Agreement and awarding

plaintiffs' counsel a total of $77.5 million in attorneys' fees. (Amended Order Granting Final Approval of Settlement, Certifying Settlement Class, and Awarding Attorney's Fees, Expenses and Service Awards, at 1.) Under the terms of the Settlement Agreement, Class Counsel was responsible for determining the distribution of the fee award. (Settlement Agreement and Release at ¶ 11.1.) This is not to say that the Court abdicated any role in the allocation of attorneys' fees: in the final judgment, the Court retained jurisdiction over the attorneys (among other parties) "for all matters relating to this action, including (without limitation) the administration, interpretation, effectuation or enforcement of the Settlement Agreement and this Final Order and Judgment." (Final Order and Judgment ¶ 21.)

More than three years after the Court entered the Final Order and Judgment, Sanford Heisler Sharp, LLP ("Sanford"), one of the non-leadership firms in the Equifax MDL, filed suit in Chancery Court for Davidson County, Tennessee, (the "Tennessee Action") against Co-Lead Counsel—Stueve Siegel Hanson, LLP; Doffermyre Shields Canfield & Knowles, LLC; and DiCello Levitt Gutzler, LLC. (Sanford Compl. at 1.) Sanford alleges that its allocation of the fee award ($106,274) was grossly disproportionate to its "vast contributions of time and effort to the matter and critical role in its success." (*Id.* ¶ 2.) According to the complaint, Co-Lead Counsel's method for determining the fee allocation violated their ethical and fiduciary duties to Sanford, breached the covenant of good faith and fair dealing, and unjustly enriched themselves at Sanford's expense. (*Id.* ¶ 3.) As relief, Sanford

requests compensatory damages in excess of $1 million and unspecified punitive damages or, in the alternative, disgorgement of Co-Lead Counsel's "ill-gotten gains." (*Id.* at 24 & ¶¶ 14, 25, 27, 73.)

Now, Class Counsel move this Court to issue a permanent injunction against the Tennessee Action using its authority under the All Writs Act. (Class Counsel's Br. in Supp. of Class Counsel's Mot. for Inj., at 3.) The Tennessee Action, Class Counsel urge, "is a blatant attempt to dodge this Court's jurisdiction, evade the Court's orders restricting the role and compensation of non-leadership firms, and substitute a Tennessee jury's judgment for that of this Court regarding what time is compensable in the MDL." (*Id.*)

## II.   Legal Standard

The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Through the All Writs Act, Congress codified "the long recognized power of courts of equity to effectuate their decrees by injunctions or writs of assistance and thereby avoid relitigation of questions once settled between the same parties." *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993). The Anti-Injunction Act, by contrast, acts as a restraint on the broad powers granted to federal courts by the All Writs Act. *See id.* Under the Anti-Injunction Act, a federal court may not enjoin state court proceedings *except* "[1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3]

3

to protect or effectuate its judgments." 28 U.S.C. § 2283. Only the second and third exceptions are relevant to this case. "The All Writs Act and the Anti-Injunction Act are closely related, and where an injunction is justified under one of the exceptions to the latter a court is generally empowered to grant the injunction under the former." *Burr & Forman v. Blair*, 470 F.3d 1019, 1027-28 (11th Cir. 2006).

### III.   Discussion

Class Counsel ask the Court to issue a permanent injunction directing Sanford and all those acting in concert with it to dismiss the Tennessee Action and to take no further steps to challenge its share of the attorneys' fee award except in this Court. In response, Sanford contends that such an injunction would exceed the Court's authority under both the All Writs Act and the Anti-Injunction Act. The Court addresses each statute in turn.

### A. All Writs Act

At the outset, Sanford argues that Class Counsel's requested relief is not necessary to protect this Court's jurisdiction over the Equifax MDL. (Sanford's Br. in Opp'n to Class Counsel's Mot. for Inj., at 9-10.) Sanford reasons that the Tennessee Action does not encroach on the Court's jurisdiction because that case raises only "the peripheral, post-litigation issue of whether [Class Counsel] violated Tennessee law when they assigned [Sanford] its share of the fee award in 2022—more than two years after final settlement approval." (*Id.*) This argument is completely without merit. In the Tennessee Action, Sanford seeks to directly challenge this Court's management

4

of the Equifax MDL—and specifically to subvert the many orders that this Court issued governing the award of attorneys' fees.

First, in the order appointing counsel leadership, the Court mandated that "[i]n order for their time and expenses to be compensable, those not serving in leadership positions must secure the express authorization of Co-Lead Counsel for any projects or work undertaken in this litigation."[1] (Order Appointing Counsel Leadership, at 10.) The Court further committed to perform, on a quarterly basis, *in camera* review of the hours billed by all plaintiffs' counsel, including non-leadership firms. (*Id.*) The Settlement Agreement and Release, as adopted by the Court, set forth additional procedures for apportioning and distributing attorneys' fees. In particular, paragraph 11.1 provides that the "Plaintiffs, through Class Counsel, will request up to $77,500,000 of the Consumer Restitution Fund . . . to pay reasonable attorneys' fees for work performed by Class Counsel or other counsel working at their direction in connection with this litigation, to be distributed as determined by Class Counsel." (Settlement Agreement and Release, at ¶ 11.1.) The Court also approved Class Counsel's motion for attorneys' fees—without objection from Sanford or any other non-leadership firm—which asserts that "the appointed leadership firms perform[ed]

---

[1] As discussed in Class Counsel's brief, ever since the Equifax MDL was created in December 2017, the Court has been intent on limiting the role of non-leadership firms to avoid the kind of exorbitant attorneys' fee requests that Judge Lucy Koh faced in the Anthem MDL. (Class Counsel's Br. in Supp. of Class Counsel's Mot. for Inj., at 4-6, 17.)

93.1% of the total hours of work and 95.1% of the total lodestar[.]" (Class Counsel's Br. in Supp. of Class Counsel's Mot. for Att'ys' Fees, Expenses, and Service Awards to the Class Representatives, Ex. 1 ¶ 47.) The motion explains that "Class Counsel generally limited potentially compensable time to that incurred while communicating with and vetting individual consumer plaintiffs, and to specific work performed to comply with Court directives after creation of the MDL but before appointment of consumer leadership." (*Id.* ¶ 44.) In a chart listing each firm's compensable time, Class Counsel allocated Sanford a total of 519.80 hours with a lodestar of $106,274.00. (*Id.* at 84.) Again, Sanford never objected to these amounts with the Court before it initiated the Tennessee Action.

Not only did the Court approve the specific method for calculating and allocating attorneys' fees to plaintiffs' counsel, but it also retained exclusive jurisdiction in the Final Judgment and Order to resolve any disputes among counsel regarding the fee allocation. (Final Order and Judgment ¶ 21 ("The Court retains jurisdiction over this action and the Settling Parties, Settlement Class Members, *attorneys*, and other appointed entities, for *all matters relating to this action*, including (without limitation) the administration, interpretation, effectuation or enforcement of the Settlement Agreement and this Final Order and Judgment." (emphasis added)). The Tennessee Action does not, as Sanford claims, raise only a peripheral, post-litigation issue to the MDL; it invites a Tennessee court to usurp this Court's jurisdiction so that a Tennessee jury might reconsider the fair, orderly

distribution of attorneys' fees as provided in this Court's orders. The Sanford firm is attempting to hijack this Court's jurisdiction, hold it for ransom, and if the firm's demands are not met, hand it over to a state court in Tennessee that has no connection whatsoever to this case. There is no question, then, that this Court has the authority necessary to enjoin the Tennessee Action under the All Writs Act. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) (explaining that to obtain an All Writs Act injunction, a party "must simply point to some ongoing proceeding, or *some past order or judgment*, the integrity of which is being threatened by someone else's action or behavior." (emphasis added)).

## B. Anti-Injunction Act

Next, Sanford argues that whatever authority the Court has under the All Writs Act is blocked by the Anti-Injunction Act. (Sanford's Br. in Opp'n to Class Counsel's Mot. for In., at 12-13.) That is, Sanford maintains that neither of the relevant exceptions to the Anti-Injunction Act would permit the Court to issue the requested injunction. (*Id.*) The Court begins its discussion with the "necessary in aid of its jurisdiction" exception. "Ordinarily, a federal court may issue an injunction 'in aid of its jurisdiction' in only two circumstances: (1) the district court has exclusive jurisdiction over the action because it had been removed from state court; or, (2) the state court entertains an *in rem* action involving a res over which the district court has been exercising jurisdiction in an *in rem* action." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1250-51 (11th Cir. 2006). There is also a third scenario in

7

which it might be appropriate to enjoin a state court proceeding. "Called the 'complex multi-state litigation' exception, it enables a district court to enjoin a state court proceeding in aid of its jurisdiction when it has retained jurisdiction over complex, *in personam* lawsuits." *Id.* at 1251. As the Eleventh Circuit recognized in *Wesch*, this exception applies both after the entry of a final judgment in federal court and to proceedings that are not strictly *in rem*. *Wesch*, 6 F.3d at 1470. Indeed, the Eleventh Circuit has described "a lengthy and complicated class action" as the "virtual equivalent of a res to be administered." *Id.*; *see also Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989).

The Equifax MDL is precisely the kind of lengthy and complicated class action contemplated in *Wesch*. However, Sanford argues that an injunction is improper because the Tennessee Action does not "directly attack" the substance of the Court's earlier rulings. (Sanford's Br. in Opp'n to Class Counsel's Mot. for Inj., at 14 (alteration omitted) (quoting *Burr*, 470 F.3d at 1033).) Not so. To repeat, the Court retained jurisdiction in the Final Order and Judgment over the implementation of the Settlement Agreement, and an integral part of the settlement was the award of attorneys' fees. In fact, when the Court granted the motion for attorneys' fees, it relied on Class Counsel's representation (without objection from Sanford) that Sanford had worked 519.80 compensable hours on the case with a lodestar of $106,274.00. Sanford's state court complaint, by contrast, asks to be compensated for up to 3,900 hours and $1.4 million in attorneys' fees. (Sanford Compl. ¶¶ 14, 27.) The Court also

entrusted Class Counsel with authority to determine how to distribute the total fee among plaintiffs' counsel. If resolved in Sanford's favor, the Tennessee Action would produce a contradictory state court judgment that "purport[s] to bind substantially the same litigants on substantially similar claims" related to attorneys' fees. *In re Bayshore*, 471 F.3d at 1252. The result would be to "confuse the parties as to their legally enforceable rights and obligations" and to frustrate this Court's judgment along with "all of the time and effort put into producing that resolution[.]" *Id.*

It would be untenable, in complex multi-district litigation like this, to allow disgruntled law firms to run to state court whenever they are dissatisfied with their share of attorneys' fees. The state court judge has no knowledge of the case; no understanding of the concerns that animated my management of the case. Sanford's filing of the Tennessee Action show that it has no appreciation of the turmoil that actions like this would cause in MDL class action settlements. From the start of the Equifax MDL, this Court sought to prevent law firms with minor roles like Sanford from racking up exorbitant billable hours, as Judge Koh had experienced in the Anthem MDL. As explained, the Court issued multiple orders to that end and even undertook its own quarterly review of the hours incurred by leadership and non-leadership counsel to ensure an orderly disposition of the attorneys' fee award. All of this careful work would be undone if non-leadership firms—of which there were almost 50 in the Equifax MDL—were allowed to hijack this Court's jurisdiction and to pursue their grievances through individual state court lawsuits as Sanford is

attempting now. Therefore, the Court concludes that under the complex multi-state litigation exception, an injunction halting the Tennessee Action is necessary in aid of the Court's continuing and exclusive jurisdiction over the Equifax MDL.

The Court need go no further in its analysis of the Anti-Injunction Act. However, the statute provides independent grounds to grant the requested injunction under the "to protect or effectuate its judgments" exception. Also known as the "relitigation exception," it "is essentially a res judicata concept designed to prevent issues that have already been tried in federal court from being relitigated in state court." *Wesch*, 6 F.3d at 1471. When evaluating a claim of res judicata, federal courts apply the law of the state in which they sit. *See id.* Under Georgia law, the elements of res judicata are (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) a previous adjudication on the merits (4) by a court of competent jurisdiction. *See Crowe v. Elder*, 290 Ga. 686, 688 (2012). Where applicable, res judicata acts as a procedural bar to claims that either were raised or could have been raised in a prior action. *See Dalton Paving & Constr., Inc. v. S. Green Constr. of Ga., Inc.*, 284 Ga. App. 506, 508 (2007).

Sanford argues that none of the elements of res judicata are satisfied between the Equifax MDL and the Tennessee Action. (Sanford's Br. in Opp'n to Class Counsel's Mot. for Inj., at 20.) First, according to Sanford, the parties to the two lawsuits are completely different—in the first, Equifax versus its consumers and in the second, Sanford versus Class Counsel. (*Id.*) In Georgia, "[t]he term 'party' to an

action includes all who are directly interested in the subject matter, and who have a right to make defense, control the pleadings, examine and cross-examine witnesses, and appeal from the judgment." *Sweet City Landfill, LLC v. Lyon*, 352 Ga. App. 824, 836 (2019) (citation omitted). Both Sanford and Class Counsel, acting as legal representatives of the consumer class, had a direct interest in the subject matter of the Equifax MDL and also had the right to make defenses, control the pleadings, examine and cross-examine witnesses, and appeal from the judgment—particularly with respect to the current fee dispute. While others made objections to Class Counsel's requested fee on the record, Sanford was silent despite having notice and an opportunity to contest the procedure for determining (and even the proposed amount of) its fee allocation. (Amended Order Granting Final Approval of Settlement, Certifying Settlement Class, and Awarding Attorney's Fees, Expenses and Service Awards, at 93-102.)

Finally, Sanford argues that the Court has not entered judgment on any of the claims asserted in the Tennessee Action, including for breach of fiduciary duty, breach of contract/breach of the covenant of good faith and fair dealing, quantum meruit, and unjust enrichment. (Sanford's Br. in Opp'n to Class Counsel's Mot. for Inj., at 20.) True, none of these claims were raised *in name* during the Equifax MDL, but whether there is an identity of cause of action depends on "the entire set of facts which give rise to an enforceable claim." *Crowe*, 290 Ga. at 688 (citation omitted). That is, "[t]o determine what constitutes each cause of action in the present

11

situation[,] the subject-matter and the issues raised by the pleadings in the two cases must be examined." *Id.* In the Tennessee Action complaint, Sanford makes frequent reference to its involvement in the Equifax MDL, to Class Counsel's management and docket filings related to attorneys' fees, and to this Court's orders governing attorneys' fees. (Sanford Compl. ¶¶ 14-21, 26-39, 41-51, 66, 70, 73-74, 80, 89-90, 97-100.) For example, Sanford alleges that the Court's order appointing Class Counsel gave rise to a fiduciary and contractual relationship between Class Counsel and Sanford, and that Class Counsel abused the control granted to them by the Court to make large, unilateral cuts to Sanford's reported time but not their own. (*Id.* ¶ 18-19.) These facts and issues are inextricably intertwined with, and should have been raised in, the Equifax MDL.

Moreover, the Court has already resolved the fundamental questions posed in the Tennessee Action—namely, what kind of work by non-leadership firms is compensable, what share of the total hours and lodestar was contributed by Class Counsel compared to non-leadership firms, and who has the authority to determine the allocation of the fee award. As explained, the Court approved the Settlement Agreement and adopted it as part of the judgment, providing in relevant part that attorneys' fees were "to be distributed as determined by Class Counsel." (Settlement Agreement and Release, at ¶ 11.1.) If Sanford was displeased with this procedure for allocating fees, it could have objected before this Court, but it did not. Class Counsel also specified the total number of hours and lodestar attributed to each plaintiffs' firm

in the motion for attorneys' fees, which was approved by the Court. (Class Counsel's Br. in Supp. of Class Counsel's Mot. for Att'ys' Fees, Expenses, and Service Awards to the Class Representatives, Ex. 1 at 83-84.) If Sanford was displeased with its proportion of the hours or lodestar, it could have objected before this Court, but it did not. In the motion for attorneys' fees, Class Counsel further described their methods for limiting compensable time that was incurred by plaintiffs' counsel both before and after their appointment. (*Id.* ¶ 44.) If Sanford was displeased with this method for limiting its compensable time, it could have objected before this Court, but it did not. Accordingly, the Court finds that there is identity of cause of action between the two cases as well as a prior adjudication on the merits by a court of competent jurisdiction. The requirements of res judicata are satisfied as to the Tennessee Action, meaning that Class Counsel's requested injunction is also appropriate under the relitigation exception to the Anti-Injunction Act.

## IV.   Conclusion

For the reasons set forth below, Class Counsel's Motion for Immediate Injunctive Relief to Prevent Evasion and Violation of this Court's Jurisdiction and Orders [Doc. 1249] is GRANTED. Sanford Heisler Sharp, and all those acting in concert with Sanford Heisler Sharp, are ENJOINED from proceeding with the action filed against Co-Lead Counsel in the Chancery Court for Davidson County, Tennessee, C/A No. 23-0169-I, and are ORDERED to dismiss that action with prejudice within five (5) days of the date of this Order. Should Sanford Heisler Sharp

wish to pursue its claims against Co-Lead Counsel concerning the allocation of attorneys' fees, this Court has the exclusive jurisdiction to hear such a dispute.

SO ORDERED, this ___22nd___ day of March, 2023.

THOMAS W. THRASH, JR.
United States District Judge